[No. 8616.   Department Two.   July 2, 1910.]

## MABEL GORDON, a Minor, by Marion L. Gordon, her Guardian Ad Litem, Appellant, v. SNOQUALMIE LUMBER & SHINGLE COMPANY, Respondent.[1]

NEGLIGENCE—DANGEROUS PREMISES—PLACES ATTRACTIVE TO CHILDREN—HOT WATER BARREL.  The owner of a mill was not negligent in the maintenance of a barrel of hot water, so as to be liable for injuries to a child nine years of age, who was scalded when a plug came out while she was attempting to take water from the barrel, where it appears that the barrel was about three feet high covered with a lid, and accessible only from one side, that the plug was an ordinary cedar plug apparently sound, and there was nothing to show how it came to be removed, that the parents of the child had lived in the neighborhood, and with others used the water for domestic purposes, and permitted the child to go there and never anticipated any danger or warned her to keep away (DUNBAR, J., dissenting).

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered February 11, 1910, dismissing, at the close of plaintiff's case, an action for personal injuries.  Affirmed.

*Jackson Silbaugh,* for appellant.

*Brownell & Coleman* and *Francis H. Brownell,* for respondent.

MOUNT, J.—This action was brought by the plaintiff, Mabel Gordon, a minor, by her guardian *ad litem,* to recover for personal injuries.  At the conclusion of the evidence for the plaintiff, the trial court dismissed the case.  The plaintiff has appealed from that order.

[1]Reported in 109 Pac. 1044.

The facts are substantially as follows: At the time of the appellant's injury, the respondent operated a shingle mill in the town of Snoqualmie, in this state. The mill was located on the right of way of the Northern Pacific Railway Company, to the east of the main track of that company. The appellant lived with her father and mother about one hundred and sixty feet west of the mill. The main line of the railway company ran between the mill and her home. The plaintiff was "going on ten years old." The mill company carried an exhaust steam pipe from its dry kiln a distance of one hundred and ten feet, where the pipe emptied into a barrel. This barrel was sixty feet from the nearest building and forty-eight feet east of the railway track. It was placed at the edge of an old mill pond which had become filled up with logs and debris. The barrel was accessible from the railroad track. It was full of hot water, from which steam or vapor constantly arose. The men from the mill used the water from the barrel for washing purposes, and people in the vicinity were accustomed to go there for water for domestic purposes. Children sometimes played near the barrel and took water therefrom. A cover was kept on the barrel. About the middle of the barrel, a wooden cedar plug was placed in the bunghole of the barrel. There was no rail or guard around the barrel, and no notice warning people away. It simply stood by the pile of debris, and was readily accessible to any one who desired to go to it from the direction of the railway track.

On July 2, 1907, the mother of the appellant started from her home on the west of the railway track to go to the barrel for a pail of hot water. While on her way, she was stopped by a neighbor woman, and she placed her bucket down upon the ground. The little girl took up the bucket and ran on to the barrel and, while in the act of dipping water from the barrel, the plug came out and hot water poured on her leg, scalding the limb from the knee down. After the child was taken home, the father went over to the

18—59 Wash.

barrel and picked up the plug, which he testified was wrapped with some kind of burlap which was rotten. The plug was a solid cedar plug, about six inches long and two inches in diameter at one end and one and one-quarter inches in diameter at the other. The little girl had taken water from the barrel before to wash doll clothes and to wet sand with. She had also played around there with other children. The men running the mill had seen her there often, and she had never been told to keep away.

It is argued by counsel for appellant that the barrel of hot water was an attractive nuisance and the danger to children should have been contemplated, and that the question of negligence of the respondent was therefore one for the jury. Cases are cited to the effect that appliances not in themselves dangerous may be exposed in such a way as to become dangerous and render the owner liable for injuries caused thereby. *McAllister v. Seattle Brewing & Malting Co.*, 44 Wash. 179, 87 Pac. 68, and *Kinchlow v. Midland Elevator Co.*, 57 Kan. 374, 46 Pac. 703, are relied upon. The first of these cases was where a sheave wheel over which a cable operated was located in a place where people were accustomed to travel. The wheel was stopped and started at intervals. A boy upon the street saw it and placed his foot upon the slowly moving cable, when it started up rapidly, and the boy's foot was drawn between the cable and the pulley. We held in that case that the question whether the sheave wheel was dangerous or attractive to children and must have been forseen was one for the jury. In that case we said:

"Where the dangerous machinery is connected with an ordinary manufacturing plant, and so surrounded with the ordinary safeguards as to legitimately lead to the conclusion that children of immature years unattended will not approach it, the owner or operator owes no such duty of active vigilance to possible trespassing children as required him to keep a guard over the premises; and hence is not responsible if a child does approach and meet with injury from such machinery. . . . On the other hand, we have held

that, where dangerous machinery and dangerous substances, of a character likely to excite the curiosity of children and allure them into danger, have been left unguarded in exposed places close to the highways, or playgrounds of children, even though on the premises of the owner, and children have been attracted to them and met with injury, the owner or person leaving the dangerous machinery or substance is liable for such injury."

We think the case at bar falls within the principle of the first rule there stated. The barrel of hot water was connected with an ordinary manufacturing plant. It was so surrounded as to appear absolutely safe. It was a wooden barrel, apparently three feet high by about eighteen inches in diameter. It was covered with a lid. Steam or vapor was issuing from it at all times, and sometimes water was bubbling over the sides. It was accessible only from one side, while the other sides were surrounded by debris. The approach to it was by walking a large, flat timber, upon one end of which the barrel was standing. The little girl, while of the age of nine years, knew that the water was hot, had used it before, and had been there frequently. Her parents, of course, knew that the water in the barrel was hot. They knew the location and condition of the barrel, and they permitted her to go there, and had never warned her to keep away. This shows conclusively that they did not apprehend any danger, and there is no evidence in the record showing that any one supposed or considered the barrel dangerous. The inference is that it appeared safe. In other words, the barrel of hot water was so surrounded with ordinary safeguards that it was apparently safe and would not be supposed to be dangerous even for children to play around; not even the parents of the child who went there anticipated danger. Under such circumstances it cannot be held that the respondent was bound to apprehend danger which was not apparent. It is true that children had upon previous occasions played near the barrel, and that they had taken water from the barrel.

It may be conceded that they were lured there, and it may also be conceded that the hot water was dangerous. Still the evidence does not show that the water was unguarded, or exposed in such a way as to render the respondent liable. The barrel was a substantial one, securely placed, and covered in plain view. There was no element of a trap about it. The plug which came out is a substantial one and, so far as the evidence shows, may have been removed and insecurely replaced by some one a short time before the accident. It is not shown what caused the plug to come out, and there is no showing of notice, or opportunity of notice, to respondent of a defective condition of the barrel or the plug. Under these circumstances it cannot be held that the case falls within the rule upon which the *McAllister* case was based, or upon the rule of safe place, or of a trap, as in the Kansas case. It falls within the rule of *Clark v. Northern Pac. R. Co.*, 29 Wash. 139, 69 Pac. 636, 59 L. R. A. 508; *Curtis v. Tenino Stone Quarries*, 37 Wash. 355, 79 Pac. 955; and *Harris v. Cowles*, 38 Wash. 331, 80 Pac. 537, 107 Am. St. 847, where the owner would not ordinarily apprehend danger.

The barrel of hot water in this case cannot be held to be an attractive nuisance. It is true the water in it was hot, but this fact caused steam or vapor to arise from it at all times, and consequently was a warning to even a child of the tender age of nine years that the water would burn if she came in contact with it. The fact that the water was hot would tend to prevent children playing in it, much more so than if the water were cold or merely warm. If this barrel had contained cold water, it could not be held to be an attractive nuisance. If the barrel of water in this case may be held to be inherently dangerous, so as to belong to that class of cases where owners are liable for accidents to children, then the barrel of rain water, or the pond, or the cherry tree, or a fire on a vacant city lot near where children are accustomed to play, is an attractive nuisance, and if children are drowned or injured therein the owners of such lots

are liable. Such, of course, is not the rule. In *Ritz v. Wheeling,* 45 W. Va. 262, 31 S. E. 993, 43 L. R. A. 148, the court said:

"Almost everything will attract some child. The pretty horse, or the bright red mowing machine, or the pond in the farmer's field, the millpond, canal, the railroad cars, the moving carriage in the street, electric works, and infinite other things, attract the child, as well as the city's reservoir. To what things is the rule to be limited? And where will not the curiosity, the thoughtlessness, and the agile feet of the truant boy carry him? He climbs into the high barn and the high cherry tree. Are they, too, to be watched and guarded against him? As was well said in *Gillespie v. McGowan,* 100 Pa. St. 144, this rule 'would charge the duty of the protection of children upon every member of the community except their parents.' A very onerous duty!"

We think the barrel was not of such a nature as to require the respondent to anticipate danger, and therefore the trial court correctly dismissed the case. The judgment must be affirmed.

RUDKIN, C. J., CROW, and PARKER, JJ., concur.

DUNBAR, J. (dissenting)—I dissent. It seems to me, from the statement of the case presented in the majority opinion, that the judgment ought to be reversed. The testimony shows that the children in the neighborhood used this ground for playing purposes; that this fact was known to the operators of the mill, as was also the fact that water from the barrel was used generally by the settlers in the neighborhood. The argument is that the barrel of hot water was so surrounded with ordinary safeguards that it was apparently safe, and that it would not be supposed to be dangerous. Of course, if there had been an apparent danger, then the element of contributory negligence would enter in, and there could be no recovery. But the fact that it was not apparently dangerous, and was dangerous in fact, throws the burden of ascertaining the danger upon the party who placed it there, was operating it, and was responsible for it.

The evidence does not show in what manner the plug was removed. The child was so badly hurt at the time the accident occurred that she was not able to remember anything very definitely about it, except that the water poured out on her and injured her when she was attempting to get water. It may have been that the plug was so loosely maintained there that, in brushing against it, it came out. It may have been that she stepped on it, to aid her in getting to the top of the barrel for the purpose of getting water. But, in any event, it proved to have been dangerous, and a view of the plug is convincing that it was, at least, a very rude and insufficient fastening to a barrel of scalding water in a place which was frequented by the neighborhood, and by the children of the neighborhood who were known to play around it, who used it to wash their doll clothes in, and to wet sand for the purpose of making sand houses.

The opinion relies largely upon *Ritz v. Wheeling*, 45 W. Va. 262, 31 S. E. 993, 43 L. R. A. 148, but all that is said in that case was the purest dictum. That was a case where a child was drowned in a reservoir belonging to the city of Wheeling, and the court decided that, in the absence of a statutory provision, the city was not liable, under the theory that, where a city under the authority of the general law, undertakes a work for the sole use and benefit of the public, it is not liable for an injury caused by negligent or defective act of its servants, unless some statute, either directly or by implication, gives a private remedy; and there being no statute in that state giving a private remedy, the court held that the action could not be maintained. So that it was not necessary to discuss the question of liability, so far as the negligence of the city was concerned. The writer of the opinion, though, saw fit to go outside of the necessities of the case, to deliver a discursive, flowery, and poetical dissertation on the allurements in nature which beset children, a portion of which is presented by the majority opinion. If this thought, which was solely the thought of the writer of

the opinion and for which the court was in no way responsible, were to be followed, it would logically follow that there could be no recovery for a damage to children where they had been lured into danger. But it would be safer and more satisfactory to practitioners, as well as clients, if this court would follow the principles enunciated in its own decisions, rather than those of courts where the general principles announced by this court have been repudiated, as in the case just cited. This court has taken the reverse of the view taken by the court in that case on every question discussed, and an examination of that case shows that many of the cases which were severely criticized in the opinion were cases announcing the principles which have been adopted by this court. This case, in my opinion, cannot be distinguished from *McAllister v. Seattle Brewing & Malting Co.*, 44 Wash. 179, 87 Pac. 68, where the two rules were announced as set forth in the majority opinion. But certainly the first rule announced, viz., that

"Where the dangerous machinery is connected with an ordinary manufacturing plant, and so surrounded with the ordinary safeguards as to legitimately lead to the conclusion that children of immature years will not approach it, the owner or operator owes no such duty of active vigilance to possible trespassing children as required him to keep a guard over the premises,"

is not applicable to this case. There is no question here of leading the owners of this plant to the legitimate conclusion that children of immature years would not approach it, for the testimony is to the effect that they did approach it, that the owners knew that they approached it, that it was an accommodation to the people of the neighborhood generally which was conferred upon them by the company, and that the use had gone to such an extent that it must be presumed that they were there by invitation of the owners. But, quoting again from the same opinion:

"On the other hand, we have held that, where dangerous

machinery and dangerous substances, of a character likely to excite the curiosity of children and allure them into danger, have been left unguarded in exposed places close to the highways, or play grounds of children, even though on the premises of the owner, and children have been attracted to them and met with injury, the owner or person leaving the dangerous machinery or substance is liable for such injury."

This case falls squarely within that announcement. The dangerous place was left. The bubbling and steam of the water were visible and were likely to excite the curiosity of children. It was not safely guarded. If the barrel had been furnished with an ordinary faucet by which to turn the water on and off, it would have been some notice that the water would escape if the faucet were manipulated. But here the exhibit in the case shows that it was simply a bungling device which would naturally, if children were playing around it, result in the casualty which is the subject of this controversy. In discussing this question in the case just above cited, we further said, after reviewing some prior cases:

"The children injured in each case had no special license to be at the place where the injury occurred, nor did the owner of the articles or substance causing the injury owe to the children any special duty of protection or care. But the cases are rested on the principle that it is negligence in itself to leave, exposed and unguarded near the haunts of children, dangerous machinery or compounds which must necessarily result in injury to them if they come in contact with it. It matters not that the dangerous article may be on the premises of its owner, or that the injured person must become technically a trespasser to approach it. It is enough that the thing is dangerous in itself, and is attractive and alluring to children, and has been left exposed and unguarded in a place where it must reasonably have been anticipated that children would be attracted to it, and tempted to play with and handle it;"

an altogether different sentiment from the uncalled for expression of opinion by the judge who wrote the opinion in the *Wheeling* case. It seems to me that this is a stronger case in favor of reversal than that case, for there the boy

was passing over the plant of the brewing company, and here the child was simply doing what the whole neighborhood had license to do, viz., trying to obtain water from this barrel.

The judgment, in my opinion, should be reversed, and the case allowed to go to the jury.