[No. 11042.  Department Two.  October 29, 1913.]

ABEL BJORK, *Appellant*, v. THE CITY OF TACOMA, *Respondent*.[1]

NEGLIGENCE—DANGEROUS PREMISES — THINGS ATTRACTIVE TO CHILDREN—LIABILITY. Liability for injuries to a child, enticed to premises by things negligently maintained attractive to children, is not restricted to injuries that were wanton or due to recklessly careless conduct.

SAME—NEGLIGENCE—QUESTION FOR JURY. It is for the jury to determine whether a twenty-four inch opening in a flume, exposing a constantly flowing stream of water eighteen inches deep, in an unfenced right of way contiguous to a public street and permitted to be used as a playground for children, was a thing of such location and

[1]Reported in 135 Pac. 1005.

8—76 WASH.

character as to be attractive to small children, so that danger there-from should have been reasonably anticipated and guarded against by the city.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered October 11, 1912, dismissing an action for wrongful death, upon granting a nonsuit, after a trial before a jury. Reversed.

*Govnor Teats*, *Leo Teats*, and *Ralph Teats*, for appellant.

*T. L. Stiles* and *Frank M. Carnahan*, for respondent.

ELLIS, J.—In this action, the plaintiff seeks to recover damages on account of the death of his minor son, alleged to have been caused through the negligence of the defendant. It is admitted that the city of Tacoma was, at the time of the accident in question, and for many years had been, the owner of and operating a water system for supplying water to its inhabitants, and as a part of its system, maintained a wooden flume carrying water from the sources of supply to its reservoir. This flume runs along the middle of an uninclosed right of way between Clement and Alder streets, in the city. The flume was in the form of a box, about 24 inches square, and the top, at the place of the accident, was level with or a little above the surface of the ground. Prior to 1908, before the city water pipes had been laid along Clement avenue, residents of that district were accustomed, with the city's permission and for pay, to obtain water from the flume through a hole 24 inches square cut in the top of the flume. The wooden cover over this hole was on hinges and furnished with a padlock, and the people so supplied with water were provided with keys and required by the city to keep the cover at all times locked. When the city water was piped to the various residences in this section, this use of the flume was abandoned and the cover of the opening was nailed down. At the time of the accident, the hinges had rusted off, there was no padlock, and the nails which had held the cover in place had rusted and were, as one witness testified, "stubs of

nails." One witness, a boy of ten, testified that this cover had been off and the hole open continuously for two or three weeks. Other witnesses contradicted this, and the plaintiff and his wife testified that they had never seen it open at any time before the accident. The water running in the flume was about 18 inches in depth. The right of way was open, so that any one who desired had access to it and it had become, prior to the accident, a regular playground for the children of the neighborhood. The plaintiff lived with his family on the east side of Clement avenue, in sight of the flume, and there was no fence or obstruction of any kind between his residence and the flume right of way, which ran parallel with and contiguous to the avenue on the west.

On the morning of June 23, 1911, the deceased, a child a little under three years old, and another boy of about the same age, were playing along the flume. A witness who was working on the roof of a house about 300 feet from the scene of the accident, saw the boys running along the flume, and when they came to the spot where the witness supposed the cover to be, they "took a jump" as he said, and then ran back, repeating the performance. Finally he saw only one of the boys running toward the Bjork house, evidently seeking assistance, and Mrs. Bjork, the boy's mother, came out screaming and ran toward the hole. Several persons, attracted by her cries, ran to the place where the boy had fallen in, and one of them, surmising what had happened, ran down to another opening in the flume near the power house, where, with the assistance of one of the employees of the power plant, he lifted the cover from that opening and found the child lying face downward, drowned.

At the conclusion of the testimony on behalf of the plaintiff, the defendant moved for a nonsuit on the ground that the evidence failed to establish actionable negligence on the city's part. The motion was granted. From the judgment of nonsuit the plaintiff prosecutes this appeal.

Eliminating the questions of notice to the city and contrib-

utory negligence of the parents of the child, which, under the evidence, were clearly for the jury, there is but one question presented for our consideration. Was the opening in the flume, exposing a constantly flowing stream of water beneath, in an unfenced right of way contiguous for a long distance to a public street in the city and permitted to be used as a common playground by the children of the neighborhood, a thing of such location and character as to be attractive and alluring to small children, so that danger therefrom should have been reasonably anticipated and guarded against by the city?

The city, in the maintenance and operation of its water works, was acting in a proprietary and not a governmental capacity. Its liability must, therefore, be the same as that of a private owner under the same circumstances. That the child, a mere baby, was a technical trespasser or at most a mere licensee is an immaterial circumstance. A child, attracted to premises open and unguarded in a populous neighborhood by things maintained thereon enticing to the childish curiosity and instincts, is not a culpable trespasser in any sound sense. This is against the weight of authority, when measured in mere numbers, which holds the child to the rule applied to the adult who, when injured while trespassing upon the premises of a defendant, can recover damages only when the injury was wanton or was due to recklessly careless conduct on the defendant's part. But, as said by a candid textwriter:

"This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts *property* above *humanity*, leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his inability to be a trespasser in sound legal theory, and visits upon him the consequences of his trespass just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any measure of duty towards him which they would not owe under the same circumstances towards an adult." 1 Thompson, Negligence (2d ed.), § 1026.

The same writer after admitting the fact that, in many jurisdictions, the doctrine of trespass as a defense, even as applied to small children, must be regarded as established law, scathingly reprobating the doctrine as barbarous, says:

"Nevertheless, a few decisions of enlightened and humane courts are found, more or less tending to the conclusion that the owner of any machine or other thing which, from its nature, is *especially attractive to children*, who are likely to attempt to play with it in obedience to their childish instincts, and yet which is especially dangerous to them,—is under the duty of exercising reasonable care to the end of keeping it fastened, guarded, or protected so as to prevent them from injuring themselves while playing or coming in contact with it." 1 Thompson, Negligence (2d ed.), § 1031.

The more humane rule, as expressed in another text, has met with our unqualified approval:

"The owner of land where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in a safe condition, for they, being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees." 3 Shearman & Redfield, Negligence (6th ed.), § 705.

"A child of tender years who meets with an injury upon the streets or upon the premises of a private owner, though a technical trespasser, may recover for such injury if the thing causing it has been left exposed and unguarded near the playgrounds or haunts of children and is of such a character as to be alluring or attractive to them, or such as to appeal to childish curiosity and instincts; this on the principle that children of tender years, 'being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees.'" *Haynes v. Seattle*, 69 Wash. 419, 125 Pac. 147.

The above quotation and the sustaining citations show that the fact that the accident there involved happened in a public street was not regarded as a controlling or even material circumstance. *Ilwaco R. & Nav. Co. v. Hedrick*, 1 Wash. 446, 25 Pac. 335, 22 Am. St. 169; *McAllister v. Seattle Brewing*

*& Malting Co.*, 44 Wash. 179, 87 Pac. 68. We intentionally refrain from citing *Nelson v. McLellan*, 31 Wash. 208, 71 Pac. 747, 96 Am. St. 902, 60 L. R. A. 793; *Akin v. Bradley Eng. & Mach. Co.*, 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586; and *Olson v. Gill Home Inv. Co.*, 58 Wash. 151, 108 Pac. 140, 27 L. R. A. (N. S.) 884, the dynamite cases, as sustaining this rule, because, though they do sustain it in principle, the agency there involved was so inherently dangerous as to render those cases in any event soundly sustainable upon the ground of reckless conduct on the defendants' part. The turntable and machinery cases, however, are in no just sense *sui generis*. They rest, as it seems to us, upon the one broad principle common to all cases of injury from dangerous premises and all cases of socalled "attractive nuisances," that there is always a duty due to society upon the owner of premises to take reasonable care to so use his own as not to injure another, a failure to observe which is negligence. 1 Thompson, Negligence (2d ed.), §§ 1033, 1036; *Hydraulic Works Co. v. Orr*, 83 Pa. St. 332; *Bransom's Adm'r v. Labrot*, 81 Ky. 638, 50 Am. Rep. 193; *Union Pac. R. Co. v. McDonald*, 152 U. S. 262; *Briggs v. Consolidated Barb-Wire Co.*, 60 Kan. 217, 56 Pac. 4, 44 L. R. A. 655.

We cannot say, as a matter of law, that the opening in the flume was not in its nature a thing reasonably to be anticipated as inticing to young children. Whether it was or not was a question for the jury. This case is closely analogous to that of *Pekin v. McMahon*, 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206. That case arose from the drowning of a child of tender years in a pond on unenclosed premises owned by the city. The pond was in a populous part of the city near a driveway where children were accustomed to play. The city was held liable upon the doctrine of the turntable cases, and the question whether the attractiveness of the dangerous premises was such as to entice children, and such as to suggest to the defendant the probability of such an occurrence, was

held one for the jury.  See, also, *Price v. Atchison Water Co.*, 58 Kan. 551, 50 Pac. 450, 62 Am. St. 625.

We are not impressed with the argument based upon *Salladay v. Old Dominion Copper Min. Co.*, 12 Ariz. 124, 100 Pac. 441, in which it was held that maintaining an open flume on private premises did not render the owner liable for the drowning therein of a small child.  The court seems to have been influenced by the fact that there are many open flumes and ditches in Arizona necessary to irrigation and mining, and held that it would be against public policy to extend the doctrine of the turntable cases to such flumes and ditches. But, assuming the soundness of that decision, it seems to us that a distinction between an open flume carrying a stream of shallow water or an irrigating ditch, and an enclosed box with an opening such as is here maintained on premises used as a common playground in a populous city, may be soundly made, both by reason of its location and its greater danger. A child falling into such a hole obviously had no chance either of rescue or escape.

The case of *Gordon v. Snoqualmie Lumber & Shingle Co.*, 59 Wash. 272, 109 Pac. 1044, 29 L. R. A. (N. S.) 88, chiefly relied upon by the respondent, though carrying the doctrine of immunity as a matter of law to a considerable extent, by no means goes as far as we are asked to extend it in this case.  It was there held that the safeguards were such, and the location of the barrel of hot water was such, that the defendant could not reasonably be expected to anticipate the danger.  In fact, there was no danger if the plug in the barrel had been secure, and there was no evidence imputing notice to the defendant that the plug was not secure.  That this was the determinative factor in that case, is shown by the following language there used: "It is not shown what caused the plug to come out, and there is no showing of notice, or opportunity of notice, to respondent of a defective condition of the barrel or plug."  In the case before us, there was evidence that the hole had been open continuously for two

or three weeks before the accident, a time amply sufficient to warrant a jury in imputing notice. While there was evidence to the contrary, the credibility of the witnesses and the weight of the evidence were for the jury.

The case of *Curtis v. Tenino Stone Quarries*, 37 Wash. 355, 79 Pac. 955, is also distinguishable. The quarry was not in a city, and was 200 feet from any highway or public ground. It was not permitted to be used as a common playground, nor was it near one. The child had been driven away a short time before the accident. The distinction is plain.

We will not attempt a review of the many authorities cited from other jurisdictions. As we have seen, the rule in many jurisdictions is contrary to that adopted here and the decisions cannot be harmonized. We are constrained to hold that a cause of action was stated and supported by sufficient proof to put the respondent to its defense. The judgment is reversed.

CROW, C. J., MAIN, and FULLERTON, JJ., concur.