[No. 33107. Department Two. February 25, 1955.]

HARRY B. MEYER *et al., Respondents,* v. GENERAL ELECTRIC COMPANY *et al., Appellants.*[1]

[1]Reported in 280 P. (2d) 257.

*John D. MacGillivray* and *Willard W. Jones,* for appellant.

*Ralph Booth McAbee,* for respondents.

MALLERY, J.—We must decide whether a commercially operated ditch fifteen feet in average width with domestic water running in it from two to three-and-one-half feet deep, is an attractive nuisance along the unfenced portion of its course through the city of Richland.

At about noon, on August 28, 1953, plaintiff's two-year-and-eight-months old son left his home. He was unattended and on a tricycle. He traveled over two thousand feet to Thayer drive, a hard-surfaced thoroughfare parallel to and about two hundred feet distant from the ditch in question, which was unfenced and easily accessible to him. Shortly thereafter, the boy's drowned body was taken from the ditch near the city limits. There were no houses near the scene and no eyewitnesses to the tragedy.

From a judgment for damages for wrongful death in favor of the plaintiffs, the defendant appeals.

Because of the nature of the contract between the defendant and the Federal government, the law applicable is the same as if the ditch was on the defendant's private property.

The deceased infant's age *eliminates* any question of contributory negligence, and we are not concerned with the ordinary duty of care of an owner of property toward a known trespasser. The defendant is not liable unless the doctrine of attractive nuisance applies.

The respondents, in support of the judgment, contend that the ditch was an attractive nuisance and should have been

fenced at the scene of the drowning, as it was where it passes through the more populous areas of the city.

█ This state adheres to the attractive nuisance doctrine. However, our question is: Under what circumstances will a watercourse constitute an attractive nuisance?

█ It is the weight of authority that a *natural* watercourse is not an attractive nuisance, and that an artificial one is not if it has natural characteristics. As was said in *Somerfield v. Land & Power Co.*, 93 Kan. 762, 145 Pac. 893:

"The canal, as will be observed, has the characteristics of a natural stream and can no more be regarded as an attractive nuisance than would a river flowing through the city or a pond or lake therein."

See, also, *McCabe v. American Woolen Co.*, 124 Fed. 283.

█ The doctrine is applied to watercourses only when there is some circumstance constituting a trap or hidden danger which the immature mind would not appreciate or could not resist, as in *Bjork v. Tacoma,* 76 Wash. 225, 135 Pac. 1005, upon which respondents rely. In that case, the city used a wooden flume, with a cross section two-feet square, to carry its domestic water supply. At one time, an opening had been cut in the top of the flume from which water had been taken. Later, a cover had been nailed over the opening, but in time the nails had rusted away, the cover had come loose and had been missing for two weeks before the death in question. The opening in the flume was near a regular playground for the children in the neighborhood. A three-year-old boy, who had played at jumping over the opening, somehow got sucked through the flume and was drowned. The court said:

"A distinction between an open flume carrying a stream of shallow water or an irrigating ditch, and an enclosed box with an opening such as is here maintained on premises used as a common playground in a populous city, may be soundly made, both by reason of its location and its greater danger. A child falling into such a hole obviously had no chance either of rescue or escape."

█ The facts and distinction made in the *Bjork* case point up the natural characteristics of the ditch in the instant case.

It was not unnaturally dangerous, had no element of deception or of an inextricable trap, and, in fact, presented no danger by reason of being artificial that was different in any way from that of a natural watercourse. We hold, as a matter of law, that it was not an attractive nuisance.

The respondents, in support of the judgment, lay stress upon the age of the deceased child. They say:

"To 'Little Harry' Meyer, the two-year-and-eight-months-old victim in the instant case, the ditch two to five feet deep and fifteen feet wide was certainly not an 'open and apparent danger.' At that age, can it be speculated that to him this was any danger at all?"

■ The presence of danger to an unattended infant is not necessarily a test of anything but the need of parental care. An infant is afraid of nothing and in danger of everything when left to his own devices. The primary duty of care is upon the parents of an infant. *Sullivan v. Huidekoper*, 27 App. D. C. 154. Their neglect will not convert a situation admittedly dangerous to an infant into an attractive nuisance which would not be so classed as to older children.

The judgment is reversed.

HAMLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur.

---

April 4, 1955. Petition for rehearing denied.