[No. 39296.    Department Two.    August 21, 1969.]

STEVEN LAUDERMILK, *Appellant,* v. CHARLES EARL CARPENTER *et al., Respondents.**

*Sullivan, Burton & Meade,* by *Daniel F. Sullivan,* for appellant.

*Thomas D. Loftus,* for respondents.

*Reported in 457 P.2d 1004.

ENNIS, J.†—This is an appeal from a tort action in which a minor boy was denied recovery for serious burns sustained in defendants' backyard. (Henceforth defendants will be referred to in the singular.)

A brief background of the facts are: On January 4, 1964 Steven Laudermilk, then age 4, was burned severely while playing in the backyard of his friend, Michael Carpenter. The fire had been started in an incinerator by Mr. Carpenter's older son, Tony, then age 6. Mr. Carpenter had instructed his son on burning the trash in the backyard and often left Tony to supervise the fire. On this occasion Mr. Carpenter supervised by making visual checks of the fire periodically for about 30 minutes. Mr. Carpenter testified that he never saw his younger son, Michael, or the plaintiff in his backyard. Twenty minutes after the fire was started, Tony, with his father's permission, discontinued his supervision and left the backyard with a friend. Young Michael Carpenter and his friend, Steven, were apparently playing in the sandbox in the backyard at the time. The accident occurred about 1½ hours after the fire was started. The only witnesses to the accident were the plaintiff and Michael Carpenter.

The action was brought by Steven's father as guardian ad litem on the theory that defendant was negligent in entrusting fire supervision to his 6-year-old son, and then in leaving it unsupervised when he knew, or should have known, his younger son was playing in the backyard and that often other small children played there. The jury rendered a verdict for defendant and plaintiff has appealed.

Basically the assignments of error raise the issues of whether the trial court (1) erred in failing to find defendant negligent as a matter of law; (2) erred in failing to strike the defense of contributory negligence; (3) deprived plaintiff of the opportunity of adequately presenting his theory of the case to the jury; and (4) erred in excluding the testimony of the minor child Tony Carpenter.

---

†Justice Ennis is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

At the outset we point out that this case was tried and submitted to the jury on the theory that defendant owed the plaintiff child the duty of reasonable care. The trial court's instruction No. 6 is as follows:

> The owner of land where children are allowed or accustomed to play must use reasonable and ordinary care to avoid injury to a child who may come upon the property.
>
> By reasonable and ordinary care is meant that degree of care which an ordinarily careful and prudent landowner would exercise under the same or similar circumstances or conditions. Negligence may consist in the doing of some act which a reasonably prudent person would not do under the same or similar circumstances, or in the failure to do something which a reasonably prudent person would have done under the same or similar circumstances and conditions.

Plaintiff took no exception to this instruction and, in fact, urged the trial court to adopt this view of the case in the event the court did not direct the verdict in his favor.

Defendant, however, urged at the trial and now on appeal that the trial court should have instructed the jury that plaintiff was a trespasser, or at best a licensee, to whom defendant owed only the duty to refrain from inflicting willful or wanton injury.

At this point a discussion of our holdings in the *Helland v. Arland,* 14 Wn.2d 32, 126 P.2d 594 (1942); *Potts v. Amis,* 62 Wn.2d 777, 384 P.2d 825 (1963); and *Cox v. Hugo,* 52 Wn.2d 815, 329 P.2d 467 (1958) cases, relied on by both parties, is appropriate to avoid confusion as to the status of Washington law in regard to children who are plaintiffs in personal injury actions such as these.

In *Helland v. Arland, supra,* a 5-year-old girl had climbed onto the side of a milk truck. When the driver returned from making deliveries and started to pull away, the plaintiff fell or jumped from the truck and the rear wheel passed over her. It was contended that the girl was a trespasser, or at best a licensee, to whom the driver owed only the duty of refraining from willful or wanton injury. In rejecting this contention, the court cited with approval

language from *Bjork v. Tacoma,* 76 Wash. 225, 228, 135 P. 1005 (1913), which described this rule as a "cruel and wicked doctrine, unworthy of a civilized jurisprudence . . . ." After an extensive quote from the Bjork case, our court said in *Helland v. Arland, supra,* at 35:

> The *Bjork* case is not determinative of the question now presented because that decision is finally rested on the doctrine of attractive nuisance. *But it is authority for the proposition that the driver of the truck owed a duty greater than merely to refrain from inflicting willful or wanton injury. We think "the more humane rule," with respect to children who are, and can be, merely technical trespassers, is that of reasonable care.*

(Italics ours.)

In *Cox v. Hugo, supra,* the question of the standard of care owed to a 5-year-old girl under facts similar to those in the case at bar was never raised on appeal. That case went to trial on the theory, acquiesced in by the defendant, that the standard was one of reasonable care. The primary issue considered by the court on appeal was that of the contributory negligence of the child, Deborah Cox, and her parents. We will not discuss that phase of the case here. Plaintiff reasons, and we think correctly, that the *Cox* case indicates the court recognized the status of the law, in regard to the duty owed small children, was that of reasonable care.

*Potts v. Amis, supra,* involves injury to a plaintiff who was an invited guest at the defendant's summer home. While demonstrating a golf swing defendant struck and injured plaintiff with a golf club. Both plaintiff and defendant were adults. It was contended in defense that plaintiff was a licensee to whom the defendant owed only the duty of refraining from willful or wanton injury. After a thorough analysis of the cases and texts dealing with the liability of landowners to invitees, licensees and trespassers, Justice Rosellini pointed out that almost invariably when liability has been denied, it is in cases involving injury as a result of some defect in or condition of the premises, and that the consensus of opinion seems to be that where the

activities of a defendant are involved, the test should be one of reasonable care under the circumstances. Justice Rosellini said at 62 Wn.2d 787:

> We need not determine at this time whether the rule applicable to injuries resulting from the condition of the premises should be revised. But we hold that, an owner or occupier of land has a duty to exercise reasonable care to avoid injuring a person who is on the land with his permission and of whose presence he is, or should be, aware. This holding is in accord with the second exception mentioned in the dictum of the *Christensen* case [16 Wn.2d 424, 133 P.2d 797]. Insofar as *McNamara v. Hall,* *supra,* [38 Wn.2d 864, 233 P.2d 852] *Waller v. Smith,* *supra,* [116 Wash. 645, 200 P. 95] and *Schock v. Ringling Bros. & Barnum & Bailey Combined Shows, supra,* [5 Wn.2d 599, 105 P.2d 838] are inconsistent with this holding, they are hereby overruled.

Defendant argues that this case is authority for his position that since the fire in the instant case was a condition of the premises, rather than an activity of defendant, the old rules in regard to trespassers should apply. We do not so precisely read that case. The stronger message to be gleaned from *Potts* is that an owner or occupier of land under proper circumstances, owes the duty of reasonable care to one whose presence is known to him, be he an invitee or licensee.

We again point out that the *Potts* case involved adults and did not concern itself with the duty owed to small children. We think it immaterial that a defendant may be the owner of land rather than the owner of a truck *(Helland v. Arland, supra)* in connection with his responsibility to small children, and we are satisfied that the trial court properly submitted this case to the jury under its "reasonable care" instruction set out above. To rule otherwise would violate the principle of "humaneness" adopted in *Helland.*

Plaintiff contends that the fact combination in this case required a ruling by the trial court that defendant was negligent as a matter of law. Plaintiff points out that defendant knew that small children often played in his back-

yard which was equipped with swings and a sandbox. Considering the inherently dangerous and extrahazardous nature of fire, along with the ignorance of small children of such danger, plaintiff contends that failure to provide on-the-spot supervision was a violation of the duty of reasonable care owed to him as a matter of law.

In *Gordon v. Deer Park School Dist. 414*, 71 Wn.2d 119, 426 P.2d 824 (1967), this court dealt exhaustively with the question of the trial court's adjudication of negligence as a matter of law. In that case the court set out nine rules the trial court must consider before making such a ruling. The first four are ordinary rules of negligence upon which the jury was instructed in the instant case. We set out the following five rules therein enunciated at 122-23, omitting supporting citations:

(5) Whether one who is charged with negligence has exercised reasonable care is a question of fact for the jury. (6) A trial judge cannot adjudicate a person guilty of negligence as a matter of law unless the following elements are present: (a) the circumstances of the case are such that the standard of duty is fixed and the measure of duty defined by law and is the same under all circumstances; and (b) the facts are undisputed and only one reasonable inference can be drawn therefrom. (7) In order to hold that negligence has been proven by a plaintiff as a matter of law, the court must find that there is neither evidence nor reasonable inference therefrom to support a verdict for a defendant. (8) The evidence must be viewed by the court in the light most favorable to the nonmoving party. (9) In passing upon the sufficiency of the evidence to establish negligence or the lack of it, the court cannot weigh the evidence and thereby resolve disputed issues of fact.

In this case defendant testified that the burning of papers in the incinerator was a regular Saturday morning occurrence that usually took about 30 minutes. He further testified that on this morning, during the first 30 minutes, he made periodic checks on the fire and at his last observation there were only a few wisps of smoke coming from the incinerator. He did not see the plaintiff child in his backyard. The plaintiff youngster was burned approximately

1 and ½ hours after the fire was started. There was also evidence that the parties resided in rural King County where most of the residents used incinerators for trash burning. Defendant had not been made aware that Steven Laudermilk was coming that day or that he was in the area.

Whether Steven and Michael were in the sandbox 20 minutes after the fire was started is a disputed question of fact. Nine-year-old Danny Busey said they were. Mr. Carpenter said he didn't see them.

When we consider the stringent requirements which must be met before a trial judge may rule that negligence exists as a matter of law; and, when we view the evidence in the instant case in the light most favorable to the non-moving party, we can say, though reluctantly, that there was evidence, or a reasonable inference therefrom, upon which reasonable minds could differ and which could support a verdict for defendant. It is, however, an extremely close question.

We can remark, at this point, that we have the deepest sympathy for the young plaintiff. This case, like other child-burn cases is a difficult one. Injuries suffered by these small children are often serious, disfiguring, disabling and permanent. In a case as close as this on the issue of liability, there is a temptation at the appellate level to correct the decision of a callous and unthinking jury who may well have substituted the standards of the witnesses, or their own practices, for that of the reasonably prudent man. However, it is not our province to indulge in conjecture as to the thought processes of juries or to change the law to accommodate our view of the facts in a particular case. It is the jury's duty to determine the facts. As is sometimes said in criminal cases, we cannot guarantee the plaintiff a perfect trial, only a fair one. The record reveals that this was also a difficult case for the trial judge who clearly saw and performed his duty. We uphold his ruling.

■ Plaintiff next assigns error to the trial court's refusal to strike defendant's affirmative defense of contributory negligence, and in allowing evidence of contributory negligence to be introduced in the case when (a) the minor

plaintiff was incapable of contributory negligence as a matter of law, and (b) such issue was beyond the scope of the pleadings and prejudicial to the minor plaintiff's case.

Defendant did not plead contributory negligence of the minor plaintiff, but did plead contributory negligence of the parents as a defense to plaintiff's claim for past and future medical expense.

The rule in such cases is that since the contributory negligence of a parent cannot be imputed to a child, the continued presence, before the jury, of this highly prejudicial issue denies the plaintiff a fair trial. *See Cox v. Hugo,* 52 Wn.2d 815, 329 P.2d 467 (1958) and *Adamson v. Traylor,* 60 Wn.2d 332, 373 P.2d 961 (1962).

In the case at bar the trial court struck this affirmative defense on the ground of insufficient evidence and the matter was never submitted to the jury; thus, defendant urges the question is a moot one. The danger here is that even though the question was not submitted or argued to the jury, evidence taken on the point may confuse the jury as to the clear issues before it. The issue should not have been tried irrespective of the evidence. *Adamson v. Traylor, supra.* However, the plaintiff does not cite us to any portion of the record supporting his charge of prejudice. Our own search of the record does not reveal any evidence going to this point which could be deemed prejudicial to plaintiff's case or confusing to the jury. The slight evidence in support of this defense could as well have been received on the basic issue of defendant's negligence. The trial court so deemed it and we will uphold its ruling.

Plaintiff's third assignment of error deals with the trial court's failure to give the following proposed instructions:

### No. 6

As a matter of common knowledge, fire is considered to be an inherently dangerous activity; and this is a fact that may be considered by you along with the other evidence in the case.

### No. 8

You are instructed that the defendants Carpenter are charged as a matter of law with the knowledge that young children of the age of the plaintiff, Steven Lauder-

milk, are without discretion or judgment, even in their own self-protection; further, that they are creatures of impulse and impetuosity, having no habits of deliberation and forethought, and are likely to be drawn by childish curiosity into places of danger.

## No. 12

You are instructed that the defendants, in starting and maintaining a trash fire on their property when they knew, or in the exercise of reasonable care should have known, that small children of very tender years were likely to be present, have a duty imposed by law to exercise reasonable care to protect the children from the dangers inherent in that activity.

## No. 19

You are instructed that a child the age of the plaintiff, Steven Laudermilk, is considered to be, under the laws of the State of Washington, a creature of impulse and impetuosity. It has no habits of deliberation and forethought. While at play, it might remember none of the warnings that had been given. The defendants are presumed to have knowledge of such facts.

## No. 20

Under the law, one is charged with the duty of seeing those objects or persons which he would have seen had he been exercising reasonable care.

By the trial court's failure to give these instructions, it is contended that plaintiff was deprived of the opportunity to present his theory of the case to the jury.

We cannot agree. First, we note that plaintiff has always conceded that the applicable standard in this case is that of reasonable care. The jury was so instructed.

■ It has, for some years, been the policy of our Washington system of jurisprudence, in regard to the instruction of juries, to avoid instructions which emphasize certain aspects of the case and which might subject the trial judge to the charge of commenting on the evidence, and also, to avoid slanted instructions, formula instructions, or any instruction other than those which enunciate the basic and essential elements of the legal rules necessary for a jury to reach a verdict. Under this theory, counsel has been free, and, indeed, has the responsibility, to argue to the jury, the refinements of these rules within the factual framework of

his case. Detailed instructions, such as those proposed here, though once common, are now deemed to be instructions which "point up," "underline," or "buttress" portions of counsel's argument.

Though counsel's closing argument to the jury does not appear in the record, in our opinion the instructions as given in no way prevented him from arguing that fire is dangerous, children are heedless, impulsive and impetuous, and that reasonable men should be aware of these things.

Finally, plaintiff contends that the trial court erred in excluding the testimony of Tony and Michael Carpenter. We will consider this assignment only in relation to Tony, as Michael was never examined by the trial judge nor was he called as a witness. Tony Carpenter, who was age 6 at the time of the accident and age 8 at trial, was called to the stand and, in the absence of the jury, examined by the trial judge. The following is part of that examination:

Q. Who actually lit the match? Did you or Danny? A. I can't remember that very good. Q. Do you remember anybody else being around there that day? A. Huh uh. Q. Do you have a sandbox at your house? A. Yes. Q. Sometimes do you play in the sandbox? A. Yes. Q. Do other boys? A. Yes. Q. Was anybody playing in the sandbox this day the fire started? A. No, not until probably— Q. I cannot hear you. A. Not until probably when I left. Q. Till probably when you left? Do you really remember seeing anybody there in the sandbox? A. No. Q. You don't? A. No. Q. Didn't one time you say that you saw Steve there? A. I don't remember very good. . . . Q. Let's go to the day of the fire now, Tony. When you left, you went to school, did you? A. Yes. Q. Who went with you? A. Danny. Q. Didn't you go to a store first? A. No. Q. Did you go to a store later? A. I think so. Q. Did you buy some candy? A. Uh huh. Q. What? A. I think. Q. Do you really remember buying the candy or not? A. No. Q. Why did you say you think you did then? A. Because I don't remember going to the store. Q. Why did you go to the school? A. To play. Q. What did you play at the school? A. We played on the bars. Q. Do you remember whether this was summer or winter? A. It was summer. Q. You are sure of that? A. Yes. Q. Why? A. Because it was real light in the summer. Q. That is why you say it

was summer? A. Yes. Q. Do you remember what kind of clothes you had on that day? A. No.

Following this examination, the trial judge concluded that Tony's memory was questionable and consequently his testimony unreliable and of little, if any, help to the jury.

■ RCW 5.60.050 provides in part:

The following persons shall not be competent to testify:

. . .

(2) Children under ten years of age, who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly.

A child is not disqualified as a matter of law from testifying because of his age. We said in *State v. Allen,* 70 Wn.2d 690, 692, 424 P.2d 1021 (1967) that the true test of the competency of a child to testify consists of the following:

(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) *a memory sufficient to retain an independent recollection of the occurrence;* (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

(Italics ours.) *See also* Stafford, *The Child As A Witness,* 37 Wash. L. Rev. 303 (1962). The decision on the question of competency rests primarily with the trial judge, who sees and examines the witness, notices his manner, and is able to judge his memory and intelligence. These impressions cannot always be reflected in a trial record, and we have said many times that the capacity of a child to testify is a question left to the discretion of the trial judge, and his decision will not be disturbed absent a manifest abuse of that discretion. *State v. Allen, supra; State v. Ridley,* 61 Wn.2d 457, 378 P.2d 700 (1963) and cases cited. Our review of the record convinces us that the trial judge properly exercised his discretion in excluding the testimony of Tony Carpenter.

The judgment is affirmed.

HUNTER, C. J., ROSELLINI, HALE, and NEILL, JJ., concur.

[En Banc.    May 21, 1970.]*

PER CURIAM.—The majority of the court adheres to the departmental opinion heretofore filed herein.