[No. 34000. Department Two. January 16, 1958.]

GUNDER BIRKELAND et al., Respondents and Cross-appellants, v. BILL CORBETT et al., Defendants, OLIVER D. HOUCHEN et al., Appellants. [1]

'Reported in 320 P. (2d) 635.

*Venables, Ballinger & Clark,* for appellants Houchen.

*Hall, Cole & Lawrence* and *Ernest R. Cluck,* for appellants Gooden and Bergsma.

*Ferguson & Burdell,* for respondents and cross-appellants.

HILL, C. J.—This case was originally assigned to the late Judge E. W. Schwellenbach; and, following his death, a reassignment was made.

It is an action to quiet title to real and personal property (a motel), and to secure possession thereof. The action is predicated on the plaintiff having theretofore declared a forfeiture of a contract for the sale of the motel and canceled that contract. The original defendants and additional defendants filed cross-complaints, asking damages for breach of contract, with one defendant asserting a claim against the additional defendants. The somewhat complicated question presented is who is entitled to what.

Wives of several parties are joined in this litigation, but we shall throughout this opinion refer to the husbands as though they were the only members of their respective marital communities concerned in the litigation and the various agreements involved therein.

June 6, 1951, defendant Bill Corbett, the builder and owner of the motel, entered into an executory contract for

its sale to the defendant Oliver D. Houchen. The down payment consisted of a small amount of cash and considerable property of various kinds transferred by Houchen to Corbett. The balance of the purchase price was $138,000, payable nine hundred dollars per month, which payments were to be credited first on interest and next upon the balance of the principal.

Time was of the essence of the contract, and forfeiture could be had after thirty days written notice.

October 1, 1952, Corbett assigned his vendor's interest in the contract to plaintiff Gunder Birkeland, the unpaid balance at that time being $133,063.10. In consideration of this assignment, Birkeland satisfied a mortgage ($37,767.37), which he held on the property, and paid Corbett forty thousand dollars.

At the same time, by a separate agreement dated October 2, 1952, which we, following the example of counsel, will call the "holdback" agreement, it was provided that as and when the then unpaid, principal balance of the executory contract of sale was reduced by successive payments of five thousand dollars, five thousand dollars, and ten thousand dollars by the vendee (then Houchen), that these sums would become payable by Birkeland to Corbett. The effect was to give Corbett—in addition to the satisfaction of the mortgage—a possible sixty thousand dollars for his vendor's interest in the contract, forty thousand dollars paid at the time of the assignment, and twenty thousand dollars to be paid in installments, if and when the purchaser reduced the principal amounts due under the contract in the amounts indicated. Under this agreement, Corbett could pay any delinquencies on the motel sales contract in order to protect his right to the additional payments under the "holdback" agreement.

Houchen made all payments on the motel contract up to and through the month of September, 1953, but thereafter made no payment thereon, with the exception of two hundred dollars in January, 1954.

January 13, 1954, plaintiff Birkeland, claiming three thousand four hundred dollars was due and unpaid, gave

notice of intent to declare a forfeiture and cancel the contract, unless payments then in default were made on or before February 15, 1954.

February 19, 1954, more than thirty days after notice of intent to declare a forfeiture had been given, and no payments having been made, Birkeland gave notice of a declaration of forfeiture and cancellation of contract.

March 16, 1954, this action was commenced by Birkeland against Corbett and Houchen, predicated on the forfeiture, and seeking to have his title quieted against any claims by them, and to secure possession of the premises. On the same day, the then parties to the action entered into a written stipulation, giving Houchen and Corbett ninety days in which to pay all delinquent installments of the principal and interest, and all delinquent taxes. If such payments were made, the action was to be dismissed, *"and the real estate contract heretofore existing . . . shall be reinstated in full force and effect."* If the payments were not made within the ninety-day period, it was agreed "that plaintiffs may enter judgment as prayed for in the Complaint," but without any damages against defendant Houchen for withholding possession of the motel after the declaration of forfeiture.

On or about June 16, 1954, the additional defendants, Virgil Gooden and Benjamin Bergsma, conferred with Birkeland concerning the possibility of their acquiring the Corbett and Houchen interests and paying all the amounts then due under the motel contract.

The ninety days' additional time, given to Corbett and Houchen by the stipulation of March 16th, having expired, notice had been given that judgment would be entered on June 18, 1954. That morning, before time for the entry of judgment, Gooden and Bergsma met with Birkeland and his attorney and agreed to pay five hundred dollars as an attorney's fee in consideration of a five-day extension to June the 23rd.

On the following day, June 19th, Gooden and Bergsma secured a quitclaim deed from the Houchens covering the motel property, real and personal, including "prepaid in-

surance both fire and liability." They also secured a quit-claim deed from Corbett, the purpose of which was to transfer all of Corbett's rights under the "holdback" agreement.

Further extensions were granted Gooden and Bergsma by Birkeland, without consideration, and on July 9, 1954, negotiations between Birkeland on one side, and Gooden and Bergsma on the other, had reached a point where it was agreed that if Gooden and Bergsma made all the past due payments on the contract, and paid all delinquent taxes and all assessments then against the property, Birkeland would dismiss his pending action and reinstate the contract, recognizing Gooden and Bergsma as the successors in interest of Houchen under the motel contract, and of Corbett under the "holdback" agreement.

An escrow with a title insurance company was opened to implement the transaction. The two principal items in Gooden and Bergsma's financing were (1) the accepting by Birkeland of two contracts furnished by Gooden (known as the Hanson and Latham contracts) at $8,186.87, that being eighty per cent of their face value; and (2) Birkeland's payment into escrow of the first five thousand dollars under the "holdback" agreement for Gooden and Bergsma, as the assignees of Corbett's interest in that agreement. The amount over and above $13,186.87, needed to bring the monthly contract payments up to date and pay all assessments and delinquent taxes, was to be paid by Gooden and Bergsma in cash.

On July 2, 1954, Gooden had placed a check in escrow for $1,417.31 for the purpose of providing this cash payment. This check was returned marked "not sufficient funds." He picked up the check July 21st and paid to the title company $1,481.03, which was computed by Gooden to be the amount of cash needed to meet all the conditions of the agreement with Birkeland. (Gooden denies that he made the computation, but the trial court found that he did, and the evidence supports that finding.)

It is the contention of Gooden and Bergsma that with this payment on July 21st they had done everything they were obligated to do, and were entitled to have the first five

thousand dollars, to be paid to Corbett under the "holdback" agreement, applied to the delinquencies and, further, were entitled to possession of the motel from that date.

Before we consider that contention, it must be noted that this payment of $1,481.03 by Gooden was, through the fault of the escrow holder, not placed in the escrow file, and Birkeland was not advised that the check marked "not sufficient funds" had been made good until after August 25th or 26th. Notwithstanding the fact that he did not know of the July 21st payment by Gooden to the escrow holder, Birkeland did place his check for five thousand dollars in the escrow on August the 3rd, and thereafter all assessments and the delinquent taxes were paid. An additional nine hundred dollars had, however, become due on the contract on August the 1st.

We return now to the situation on July the 21st, on which date Gooden and Bergsma claim there had been complete performance on their part. They never paid anything further into the escrow, and interest on taxes and additional monthly payments on the contract became due thereafter. It is clear that if they had not met the terms of their agreement with Birkeland on July the 21st, they never did; that becomes the pivotal issue in the case.

The trial court found that even had Birkeland been obligated to put into the escrow at that time the five thousand dollars supposedly due Corbett or his assignee under the "holdback" contract, and had it then been available for paying taxes and assessments, Gooden and Bergsma would have been "short $210.14 of the amount necessary to bring said contract current." The evidence supports a finding that they would have been $210.80 short of bringing the contract current, and paying in addition the nondelinquent assessments then against the property, which it is definitely established that, at Birkeland's insistence, they had agreed to do.

September 2, 1954, another nine hundred dollar payment on the contract having become due, Birkeland took the position that Gooden and Bergsma had failed to carry out their agreement with him, and closed the escrow. The es-

crow holder thereafter delivered to Birkeland the Latham and Hanson contracts, together with the balance in cash remaining in the escrow, after the escrow holder had used Birkeland's five thousand dollars and Gooden's cash payment in satisfaction of all assessments and all delinquent taxes against the motel property.

Likewise, on September the 2nd, Birkeland took judgment in his action against Corbett and Houchen, which judgment quieted title against them and directed the delivery of possession of the motel; and on that day Birkeland did take possession by virtue of that judgment.

An order was entered, September 27, 1954, setting aside the judgment and permitting Gooden and Bergsma, as successors in interest of Corbett and Houchen, to appear as additional defendants in the action.

In their answer and cross-complaint, Gooden and Bergsma alleged that, with the knowledge and consent of Birkeland, they had acquired the interest of defendants Houchen and Corbett and had paid to Birkeland all amounts under the motel contract, and that he was obligated to dismiss the quiet title action, i.e., the present action. They alleged further that Birkeland had breached the motel contract by taking the September 2nd judgment, after receiving and accepting payment of all amounts due under that contract, and had deprived them of possession of the motel under color of the judgment so secured. They did not ask for specific performance of the contract, but alleged that they had sustained damages in the sum of sixty-five thousand dollars by reason of Birkeland's breach of the contract. (The amount prayed for was increased to eighty-three thousand dollars, plus interest from September 2, 1954, by a trial amendment.)

During the lengthy trial, there was much conflicting testimony concerning the various transactions of the parties. At its conclusion, the court made findings of fact and entered the following conclusions of law:

"II

"That additional defendants [Gooden and Bergsma] failed to bring the contract current in accordance with their agree-

ment and they are not entitled nor are the original defendants entitled to, recovery of the sums paid on said contract by Oliver Houchen or for loss for the benefit of their bargain, if any.

"III

"That by agreeing with additional defendants that they might pay certain sums into escrow to bring the contract current and by knowingly permitting additional defendants to pay certain lesser amounts into escrow, plaintiff, in effect, abandoned his previous forfeiture and cancellation.

"IV

"That no provision was made in the escrow agreement for forfeiture by plaintiff of the sums paid into escrow by additional defendants in the event of their not bringing the said contract current as agreed. That additional defendants are, therefore, entitled to judgment on their cross-complaint in said amounts, to-wit: the sum of $8,186.97, with interest from July 9, 1954 at six (6%) per cent per annum, plus the sum of $1,481.03, with interest at six (6%) per cent per annum from July 21, 1954, plus the sum of $300.00 for improvements with interest at six (6%) per cent per annum from September 2, 1954, or a total of $11,137.35, together with the sum of $5000.00 with interest at six (6%) per cent per annum from July 21, 1954, or a total additional sum of $5575.00."

Further, the court concluded that defendants Corbett and Houchen should take nothing by their cross-complaints, but that Houchen should receive $722.96, the value on September 2, 1954, "of the short-rate unexpired insurance policies," which he had taken out on the motel. The plaintiff's action was dismissed without prejudice to his right to forfeit the contract in the manner therein provided. Judgment was entered in accordance with the conclusions of the trial court. All defendants except Corbett appealed.

Appellants Gooden, Bergsma, and Houchen have made twenty assignments of error concerning findings of fact entered; proposed findings refused; conclusions of law entered, and refused.

The respondent Birkeland, on his cross-appeal, urged that the trial court erred: (1) in holding that he abandoned his notice of forfeiture; (2) in finding that five thousand dollars

became due under the "holdback" agreement, and in awarding this sum to appellants Gooden and Bergsma.

■ Appellants Gooden and Bergsma urged that Birkeland's cross-appeal should be dismissed because of the failure to comply with Rule on Appeal 43, 34A Wn. (2d) 47 as amended, effective January 2, 1953, which states that no error assigned to any finding of fact will be considered unless set out verbatim in the brief.

The errors complained of by Birkeland were not as to facts which the trial judge determined.

The first issue raised on the cross-appeal was whether the facts constituted an abandonment of his declaration of forfeiture by Birkeland—abandonment (or waiver) being, in this case, a conclusion of law to be drawn from the facts. The second issue raised on the cross-appeal was whether the trial court had correctly interpreted a contract. Labeling a misinterpretation of a contract a "finding of fact," adds no sanctity to it. See *Grove v. Payne* (1955), 47 Wn. (2d) 461, 288 P. (2d) 242.

■ We have indicated that the evidence supports a finding that Gooden and Bergsma failed to make the payments required under their agreement with Birkeland. This disposes of the basis of their claim for damages, and of most of the issues raised by them on their appeal. It also compels the conclusion that the forfeiture on February 19, 1954, was never canceled or set aside, and the original contract for the sale of the motel of June 6, 1951, was never reinstated, and that Birkeland was entitled to a decree quieting title and awarding him possession, unless by his conduct he waived the declaration of forfeiture. The question of waiver will be hereinafter discussed.

It follows, further, that Gooden and Bergsma never acquired any rights against Birkeland, except to have everything they paid into escrow returned to them when their agreement with Birkeland failed of consummation. This was the basis of the trial court's refusal to award them any damages, and it also justified, and Birkeland does not contend otherwise, the judgment in their favor of $11,137.35

referred to in conclusion IV, which we have heretofore quoted (see p. 561).

We cannot agree, however, with the further conclusion of the trial court (also set forth in conclusion IV heretofore quoted), that in addition to the judgment for $11,137.35, Gooden and Bergsma were entitled to a judgment for five thousand dollars, together with interest thereon amounting to five hundred and seventy-five dollars. This conclusion was based on the following finding:

". . . in an effort to expedite the said escrow arrangement, plaintiff delivered to Lawyers Title Insurance Company his check in the sum of $5,000.00 (plaintiffs' Exhibit 23), the said $5,000.00 being the sum to become due from Birkeland to Corbett under the holdback agreement between Corbett and Birkeland when the principal balance of said contract was reduced by $5,000.00, *as it had been by Houchen by January of 1954.*" [Finding of Fact XIV] (Italics ours.)

Houchen had, indeed, reduced the original, unpaid principal of $138,000 to less than $133,000, *i.e.*, $130,416.02 by January, 1954; but Birkeland and Corbett did not agree in the "holdback" agreement that the five thousand dollars would become payable when the vendee (Houchen) reduced the original, unpaid principal balance of the motel contract by that amount, but that the five thousand dollars would be payable when "the now present unpaid principal balance of said contract is reduced in the amount of FIVE THOUSAND AND No/100THS DOLLARS ($5,000.00)."

"The now present unpaid principal" on the motel contract at the time of the assignment from Corbett to Birkeland was $133,063.10, and there was still more than $130,000 due thereon when Birkeland gave his notice of intent to forfeit, and when he thereafter declared a forfeiture. There is no evidence to support a finding that Houchen reduced the unpaid principal by five thousand dollars subsequent to the execution of the "holdback" agreement, and the appellants (Houchen, Gooden, and Bergsma) do not attempt to support that finding. They argue that, through placing the Hanson and Latham contracts, valued at $8,186.87, and cash in the

amount of $1,481.03 into the escrow, they reduced the unpaid principal by five thousand dollars from what it had been at the time of the execution of the "holdback" agreement. However, the funds from the escrow were not applied on the motel contract, and the agreement between Birkeland, on one side, and Gooden and Bergsma, on the other, to reinstate that contract never became effective as we have heretofore seen.

The conclusion reached by the trial court on the five thousand dollar item, and the five hundred and seventy-five dollars interest thereon, is clearly erroneous; and those items must be eliminated from the judgment against Birkeland.

It should be noted that any claim of Gooden and Bergsma to the five thousand dollars must be based on what amounts to a promise by Birkeland to make them a present of five thousand dollars, rather than on the "holdback" agreement itself. Under that agreement, Birkeland's obligation to pay Corbett (or his assignee) the five thousand dollars did not arise, unless the vendee under the motel contract should

" . . . perform all of the covenants and conditions of the said real estate contract, maintain said contract in good standing and pay each and every monthly payment when the same shall become payable, until the now present unpaid principal balance of said contract is reduced in the amount of FIVE THOUSAND AND No/100THS DOLLARS ($5,-000.00)."

There can be no serious contention that the monthly payments were made when the same became due and payable, or that the contract was maintained in good standing.

The other major issue raised by the cross-appeal is whether Birkeland ever waived the declaration of forfeiture made in February, 1954, which was the basis of this action.

As previously stated, the trial court concluded:

"That by agreeing with additional defendants [Gooden and Bergsma] that they might pay certain sums into escrow to bring the contract current and by knowingly permitting additional defendants to pay certain lesser amounts into escrow, plaintiff [Birkeland], in effect, *abandoned* his previous forfeiture and cancellation." (Italics ours.)

On the basis of this conclusion, the trial court dismissed the plaintiff's quiet title action, "without prejudice to their right to forfeit the contract dated June 6, 1951, in the manner provided therein."

If there was no abandonment or waiver of the declaration of forfeiture, Birkeland was entitled to a judgment quieting title against Corbett, Houchen, Gooden, and Bergsma, based on the February, 1954, declaration of forfeiture.

We believe there is here presented no question of abandonment, and that the real issue is whether, under the factual situation presented, the evidence would support a conclusion that respondent Birkeland "waived" his previous forfeiture. This presents, practically speaking, the only issue of law involved in this appeal.

■ A "waiver" is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. The person against whom a waiver is claimed must have intended to relinquish the right, advantage, or benefit, and his actions must be inconsistent with any other intention than to waive them. *Bowman v. Webster* (1954), 44 Wn. (2d) 667, 269 P. (2d) 960.

■ To constitute a waiver other than by express agreement, there must be unequivocal acts or conduct of the vendor evincing an intent to waive. *Surry v. Baker* (1925), 132 Wash. 188, 231 Pac. 791.

Birkeland, after notices of intent to forfeit and declaration of forfeiture, commenced his action to quiet title and recover possession of the property. He then entered into a stipulation to defer judgment for ninety days to allow the vendee (Houchen) additional opportunity to make the delinquent payments, and to allow Corbett (the original vendor) an additional opportunity to protect the amounts to which he might become entitled under the "holdback" agreement. If they succeeded in raising the necessary money, he agreed to dismiss the action and reinstate the contract. After this period had expired, Birkeland gave additional extensions to Gooden and Bergsma, who had succeeded to the interest of Houchen in the motel contract,

and of Corbett in the "holdback" agreement, all without consideration, except for the five-day extension from June 18 to 23, 1954, for which five hundred dollars was paid and which went to Birkeland's attorney.

It is true that an escrow was established by the parties, and there was confusion surrounding the escrow, the deposits therein and withdrawals therefrom, resulting in part, at least, from mistakes by the escrow holder; but there is no satisfactory showing that Birkeland applied any of the escrow funds on the contract. The different times he received documents or funds from the escrow company, he believed, whether mistakenly or not, that he was legally entitled thereto. The trial court held that Gooden and Bergsma were entitled to the return of everything they paid into the escrow and the judgment so directs.

■ Birkeland did not expressly, or by inference, waive his right to insist on the forfeiture he had declared. His conduct was not inconsistent with the position that in February, 1954, he had forfeited the contract, and in consequence thereof had become entitled to possession of the motel. His original stipulation with Houchen and Corbett in this action was that, if certain conditions were met, he would reinstate the contract. His additional extensions of time to Gooden and Bergsma merely showed that he was willing to waive the forfeiture and reinstate the contract, if they would make all the payments then due under the contract and pay the assessments against the property. This they failed to do, and he proceeded to take judgment in this action, which is predicated on the contract having been forfeited. The evidence does not support the trial court's conclusion that Birkeland abandoned his forfeiture, or that he waived it. He was, therefore, entitled to judgment quieting his title against both the original and the additional defendants, and the trial court erred in failing to enter such a judgment.

The appellant Houchen contends that he is entitled to one-sixth of any recovery granted Gooden and Bergsma. This claim is predicated on the language contained in the "Quit Claim Deed," by which he transferred his interest to Gooden

and Bergsma, and statements made by counsel during the course of the trial. The deed recited that the transfer was made in consideration of receiving "1/6th of the net profits to be secured by the grantors in the event of their resale of the premises," and it was agreed by the lawyers that the same agreement applied to any recovery in the action.

The premises were, concededly, not resold by Gooden and Bergsma, and they have obviously not profited by the litigation, except to the very small extent hereinafter indicated in connection with the amount reserved for certain insurance policies. The trial court properly excluded Houchen from any share in the amounts recovered by Gooden and Bergsma, which were the $1,481.03 they paid into escrow, and the agreed value of the Latham and Hanson contracts, $8,186.87, together with the value of certain improvements they had made at the motel, $300. Had Gooden and Bergsma obtained a judgment for damages against Birkeland for the loss of their rights, as substituted vendees under the contract, a different question would be presented.

Another phase of the judgment requires consideration. The trial court found:

"That on the 2nd of September, 1954, the unexpired insurance policies in effect on said premises had a short-rate cancellation value of $722.96. That this sum was not remitted to defendant Oliver Houchen." [Finding XXII]

Based on this finding, the trial court made a conclusion of law that "Houchen shall receive the sum of $722.96, being the value of the short-rate unexpired insurance policies."

The appellants Gooden and Bergsma assign error to this conclusion, and to the failure to include the item of $722.96 in their judgment against Birkeland, because all rights in the insurance policies on the motel were assigned to them by Houchen.

This assignment is meritorious. Houchen did on June 19, 1954, "convey and quit claim" to Gooden and Bergsma "all . . . prepaid insurance both fire and liability." When Birkeland took possession on September 2, 1954, they, and not Houchen, became entitled to the short-rate cancellation value of $722.96.

The judgment is modified and remanded with instructions:

(1) To enter a judgment decreeing that the motel contract was forfeited by Birkeland in February, 1954, and quieting his title to the motel property against Houchen, Corbett, Gooden, and Bergsma.

(2) To grant appellants Gooden and Bergsma the recovery prescribed in the judgment, less $5,575, to which—for the reasons hereinbefore set forth—they never became entitled.

(3) To include in the judgment of Gooden and Bergsma the value of the "short-rate unexpired insurance policies" in the sum of $722.96.

(4) Strike from the judgment the words,

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants Houchen, et ux shall receive judgment on their cross-complaint in the amount of $722.96."

The Birkelands, having prevailed as respondents on the appeal, and as appellants on the cross-appeal, will recover their costs in both the superior and supreme courts.

DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

February 28, 1958. Petition for rehearing denied.