[No. 5597–3–III. Division Three. July 3, 1984.]

FARM CROP ENERGY, INC., *Respondent,* v. OLD
NATIONAL BANK OF WASHINGTON, *Appellant.*

*Jeffrey L. Supinger, John E. Heath, Jr.,* and *Witherspoon, Kelley, Davenport & Toole,* for appellant.

*Gerald J. Moberg, Harry E. Ries,* and *Ries & Kenison,* for respondent.

THOMPSON, J.—Old National Bank of Washington (ONB) appeals a judgment entered on a verdict of $295,000 in favor of Farm Crop Energy, Inc. (Farm Crop), for ONB's revocation of a loan commitment. We affirm.

In 1980, Farm Crop was formed for the purpose of constructing a fuel alcohol plant. In February 1981, ONB issued a commitment letter stating it would loan Farm Crop $1,475,000 if certain conditions were met, including individual guaranties, some limited and some unlimited, and a $500,000 loan guaranty from the Small Business Administration (SBA). The SBA required unlimited guaranties from all investors, contracts for raw materials, and contracts for the alcohol and spent grain.

In May 1981, Matrix Energy, the firm which was to construct the plant, informed Farm Crop there would be considerable savings if money was advanced immediately. Farm Crop members testified Mr. Danelo, of ONB, assured them the loan would go through and, based on this, they advanced $175,000 to Matrix. On the other hand, Mr. Danelo testified he told Farm Crop the loan would go through only if the conditions were met.

ONB revoked its loan commitment in June 1981. Farm Crop successfully sued, alleging breach of contract. ONB's appeal is concerned with the propriety of instructions, given and refused, and the measure of damages.

■■ ONB first contends the trial court confused the doctrines of waiver, equitable estoppel, and promissory estoppel. All parties agree waiver applies to this case, but ONB believes only waiver applies. We disagree.

Promissory estoppel requires five elements:

(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

*Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967). Instruction 9 covered promissory estoppel:

If you find that Old National Bank made a promise which it reasonably expected to cause Farm Crop Energy, Inc. to change its position, and which promise did cause Farm Crop Energy, Inc. to justifiably change its position, then the Old National Bank is liable to Farm Crop Energy, Inc. for all damages reasonably caused by the promise made and relied upon.

ONB contends an instruction on promissory estoppel was improper because there was an enforceable contract between the parties. *Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 230 N.W.2d 588 (1975) (cited with approval in *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 261 n.4, 616 P.2d 644 (1980)). ONB is correct that the letter of loan commitment cannot be the basis of promissory estoppel. Promissory estoppel is used to avoid injury when parties have failed to properly form a contract but one party has acted in reliance on the promise of another. *See Corbit v. J.I. Case Co., supra.* Farm Crop agrees, but contends the jury might have found there was no contract because it failed to perform the conditions, but that Farm Crop relied on the later promise by Mr. Danelo that the loan would go through. Although it might have been preferable to treat this latter assurance under the doctrines of waiver and equitable estoppel, it is possible to treat it as a separate promise. Thus, it was not error to instruct on the doctrine of promissory estoppel.

Equitable estoppel differs from promissory estoppel. It requires three elements:

(1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement or act; (3) injury to such other party resulting from permitting the first party to contradict or repudiate such admission, statement, or act.

*Wilson v. Westinghouse Elec. Corp.,* 85 Wn.2d 78, 81, 530 P.2d 298 (1975). Farm Crop argued that ONB was estopped to require performance of conditions due to various acts of Mr. Danelo. ONB contends equitable estoppel can be used only as a defense (a shield) but not as an independent basis

of recovery (a sword). *Klinke v. Famous Recipe Fried Chicken, Inc., supra.* ONB then assumes that since the instruction is pointed against the bank, it is being used as a sword. We disagree. Here, equitable estoppel is being used as a defense, that is, to prevent ONB from insisting on performance of conditions because of ONB's action. This is a proper use of equitable estoppel.

◾ ONB also suggests the court has confused waiver and estoppel because one waives conditions and estoppel is not the correct term. However, waiver applies only to existing rights. *Panorama Residential Protective Ass'n v. Panorama Corp.,* 28 Wn. App. 923, 627 P.2d 121 (1981), *modified,* 97 Wn.2d 23, 640 P.2d 1057 (1982). If at the time of ONB's assurances it was not yet entitled to performance of the conditions, the assurance would give rise to an estoppel, not waiver. Furthermore, waiver and estoppel differ in other ways. Waiver requires an intentional relinquishment of a right whereas estoppel may be inadvertent. Either doctrine could apply to conditions in a contract.

◾ The law of equitable estoppel and waiver is contained in instruction 8:

> If on the other hand, you find that the plaintiff, Farm Crop Energy failed to meet or could not meet any condition of the loan commitment within the time allowed for compliance, then your verdict should be for the defendant, Old National Bank unless you find that compliance with any such condition was waived by the Bank or that the Bank is estopped from asserting non–compliance with any such condition.
>
> "Waiver["] is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or may be inferred from circumstances indicating an intent to waive.
>
> "Estoppel" means that a party is precluded by his own acts from asserting a right to the detriment of another who, entitled to rely on such conduct has acted thereon.

ONB suggests the instruction on equitable estoppel improperly submits an equity matter to the jury. This was not raised by exception. Claimed error in instructions is

limited to those issues raised by exception. *Galvan v. Prosser Packers, Inc.,* 83 Wn.2d 690, 692, 521 P.2d 929 (1974). ONB is also concerned the instruction left several unanswered questions for the jury. It appears these questions are a necessary result of submitting the difficult issue of equitable estoppel to the jury. ONB did not propose any clarifying instruction. We find instruction 8 correctly stated the law of equitable estoppel and the court did not err.

ONB's next assignment of error concerns the instruction on waiver. It contends instruction 8 was inadequate because it did not require an express agreement to waive or unequivocal acts. *See Birkeland v. Corbett,* 51 Wn.2d 554, 320 P.2d 635 (1958). ONB's proposed instruction was more complete.[1] Both the given and proposed instructions appear to be correct statements of the law. *See Birkeland v. Corbett, supra; Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964). The question is whether the trial court should have given the more complete instruction.

Instructions are sufficient if they (1) permit each party to argue his theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law. *Crossen v. Skagit Cy.,* 100 Wn.2d 355, 360, 669 P.2d 1244 (1983). The language of the proposed instruction is taken directly from *Birkeland* and *Bowman v. Webster,* 44 Wn.2d 667, 269 P.2d 960 (1954). A party is not entitled to certain language just because it appeared in an appellate opinion. *Swope v. Sundgren,* 73

---

[1] "A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. It is a voluntary act which implies a choice, by the party, to dispense with something of value or to forego some advantage. The right, advantage, or benefit must exist at the time of the alleged waiver.

"The party against whom waiver is claimed must have actual or constructive knowledge of the existence of the right. He must intend to relinquish such right, advantage or benefit. In order for a waiver to occur other than by express agreement, there must be unequivocal acts or conduct by the party against whom waiver is claimed evidencing the intent to waive.

"A party asserting waiver has the duty to prove the existence of any waiver by a preponderance of the evidence."

Wn.2d 747, 440 P.2d 494 (1968). Although the proposed instruction was more explicit, the instruction as given allowed ONB to argue its theory of the case. We find no error.

The next major area of dispute is the measure of damages. The trial court allowed consideration of lost profits. ONB contends in an action for promissory estoppel, damages should be limited to those incurred in reliance, *i.e.*, $175,000. Although there are cases which deny lost profits in this type of action, there are also cases which grant them. *Compare Goodman v. Dicker*, 169 F.2d 684 (D.C. Cir. 1948); *Fretz Constr. Co. v. Southern Nat'l Bank*, 626 S.W.2d 478 (Tex. 1981); *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267 (1965) *with Chrysler Corp. v. Quimby*, 51 Del. 264, 144 A.2d 123, 144 A.2d 885 (1958) *and Kramer v. Alpine Vly. Resort, Inc.*, 108 Wis. 2d 417, 321 N.W.2d 293 (1982). Interestingly, *Kramer*, which allowed lost profits, relied on language in *Hoffman v. Red Owl Stores, Inc., supra*, which did not.

 Rather than a mechanical approach to damages, the commentators and cases support a flexible approach. *See Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d at 276–77; 1A A. Corbin, *Contracts* § 205, at 240 (1963); J. Calamari & J. Perillo, *Contracts* § 6–12 (1977). As stated in section 90, page 242, of the Restatement (Second) of Contracts (1981), "The remedy granted for breach may be limited as justice requires." Comment *d* elaborates:

> *d. Partial enforcement.* A promise binding under this section is a contract, and full–scale enforcement by normal remedies is often appropriate. But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise. See §§ 84, 89; compare Restatement, Second, Torts § 549 on damages for fraud. Unless there is unjust enrichment of the promisor, damages should not put the promisee in a better position than performance of the

promise would have put him.

The general rule is to fashion an equitable remedy. We find that lost profits were equitable in this case. Presumably, Farm Crop and ONB anticipated a profitable venture. In relying on a loan commitment from ONB, Farm Crop did not seek alternative financing for its venture. Not only did it lose its money advanced, it lost its opportunity.

Division Two of this court recently denied an award of lost profits in a case of promissory estoppel. *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762, 677 P.2d 773 (1984). There, Lomas & Nettleton agreed to loan Silverdale money for a hotel project. Silverdale hired Wick Construction to build the project. Eventually Silverdale brought a lawsuit which Wick Construction Co. joined. The court found L&N liable to Wick on the basis of promissory estoppel; specifically, L&N told Wick that Silverdale was not in default and that L&N would pay Wick in accordance with the terms of the agreement. The trial court found L&N promised to fund Wick Construction's initial draws for work performed and L&N was therefore liable for those costs. However, L&N was not liable for lost profits because it had not promised to pay for lost profits. We do not read *Silverdale* as prohibiting an award of lost profits in appropriate circumstances. Here, lost profits were appropriate and the trial court properly submitted the issue to the jury.

Even if profits are properly recoverable, ONB contends the trial court should not have submitted the issue to the jury because Farm Crop failed to provide adequate evidence.

█ Lost profits are properly recoverable as damages when

> (1) they are within the contemplation of the parties at the time the contract was made, (2) they are the proximate result of defendant's breach, and (3) they are proven with *reasonable certainty*.

(Italics ours.) *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 15, 390 P.2d 677, *modified on rehearing*, 65 Wn.2d 21, 396

P.2d 879 (1964). Here, lost profits were in contemplation and caused by ONB's failure to loan money. The only real issue is proof. *Larsen* allowed proof of lost profits by expert opinion:

> So long as their opinions afford a reasonable basis for inference, there is departure from the realm of uncertainty and speculation. Expert testimony alone is a sufficient basis for an award for loss of profits.

*Larsen,* at 17. However, there must be a substantial and sufficient factual basis upon which the respective opinions can be based. In *Larsen,* the court reduced the damages for lost profits because they were based on securing a disproportionate share of the national market for a certain product and thus were in the area of speculation. ONB contends similar speculation occurred in this case. ONB points out that (1) similar fuel alcohol plants were disasters, (2) it was unreasonable to base profits on 1 million gallons of production, and (3) the plaintiff's expert lacked sufficient technical background.

 Although there were problems with comparable fuel alcohol plants, there is considerable evidence presenting a factual basis for the opinion. Mr. Christensen, plaintiff's expert, testified as to the costs of production, expected price of products, and potential output. These were based on industry standards and available market data. Mr. Christensen testified the problems with other plants were due to operator factors or would be adjusted in a new plant. Even ONB's expert testified the plant was designed to produce over 1 million gallons a year. We find there was sufficient evidence of a factual basis to allow the issue to go to a jury.

> If a plaintiff has produced the best evidence available, and if the evidence affords a reasonable basis for estimating the loss, courts will not permit a wrongdoer to benefit from the difficulty of determining the dollar amount of loss.

*Lundgren v. Whitney's Inc.,* 94 Wn.2d 91, 98, 614 P.2d 1272 (1980).

ONB next assigns error to the failure to give several proposed instructions. First, ONB requested an instruction that a letter of intent signed by a grain company was not in and of itself a binding contract to supply grain. Such a contract was a necessary condition of the SBA guaranty and ONB felt it was entitled to this instruction because some witnesses had referred to the letter as a contract.

Generally, the construction of written instruments and the legal duty imposed by such instruments is a question of law for the trial court. *Hull v. Enger Constr. Co.*, 15 Wn. App. 511, 518, 550 P.2d 692 (1976). Certainly, the court could have instructed the jury that this letter was not a contract. However, even if we assume there was error, ONB was not prejudiced. The letter itself states:

> The following conditions must be met immediately so we can guarantee supply and price.
> 1. A signed contract between Farm Crop Energy and Kenney Grain, Inc.

It is difficult to believe a juror would think the letter was a contract if the letter itself required making a contract. Second, the majority of the testimony admitted Farm Crop was in the process of obtaining a contract. Since Farm Crop did not contend the letter was a contract and the evidence presented supported ONB's theory, ONB was not prejudiced by the absence of the requested instruction.

ONB also requested an instruction concerning the "nervous clause" in the SBA guaranty. That clause provided:

> 2. *This Authorization is subject to:*
> . . .
>> c. Receipt by lender of evidence satisfactory to it in its sole discretion, that there has been no unremedied adverse change since the date of the Application, or since any of the preceding disbursements, in the financial or any other condition of Borrower, which would warrant withholding or not making any such disbursement or any further disbursement.

ONB's requested instructions basically tracked the language of this clause.

We find there was no error in refusing the instruc-

tions. Instructions are sufficient if they permit counsel to satisfactorily argue the theory of the case to the jury. *State v. King,* 92 Wn.2d 541, 599 P.2d 522 (1979). ONB does not contend it was unable to argue that the paragraph in the SBA guaranty allowed it to withhold disbursements of the loan. ONB could have made this argument based on instruction 8, which discussed conditions generally. Instructions need not be too specific; they need only enunciate the basic and essential legal rules. *Laudermilk v. Carpenter,* 78 Wn.2d 92, 457 P.2d 1004, 469 P.2d 547 (1969). ONB's instruction would have highlighted one of a number of conditions. It appears this highlighting was unnecessary and the law was covered in instruction 8. We find there was no error in refusing the proposed instruction.

The judgment of the trial court is affirmed.

GREEN, A.C.J., and MCINTURFF, J., concur.

Reconsideration denied August 27, 1984.

Review granted by Supreme Court December 7, 1984.