[No. 21497-4-III.   Division Three.   March 16, 2004.]

SHANNA M. PETERSEN-GONZALES,[†] *Appellant*, v. DAN GARCIA, ET AL., *Respondents*.

---

[†] We note that the spellings "Gonzales" and "Gonzalez" appear in the court record. For purposes of this opinion, we shall use the spelling which appears for Ms. Petersen-Gonzalez in her deposition.

*Marcia M. Meade*, for appellant.

*Greg M. Devlin* (of *Miller, Devlin, McLean & Weaver, P.S.*) and *Vicki L. Higby* and *Troy Y. Nelson* (of *Paine, Hamblen, Coffin, Brooke & Miller, L.L.P.*), for respondents.

KURTZ, J. — Shanna Petersen-Gonzalez (Ms. Gonzalez) filed this action seeking damages for injuries she sustained as the result of an automobile accident. At the time of the accident, Ms. Gonzalez's automobile insurance included both personal injury and underinsured motorist coverage (UIM). Her contract with the UIM carrier, Metropolitan Casualty Insurance Company (MET), authorized MET to appear and defend in any personal injury claim involving an underinsured motorist. Prior to trial, Ms. Gonzalez unsuccessfully moved to prevent MET from participating in the trial.

On appeal, this court addresses the following questions: (1) Does MET's right to defend under the UIM contract include the right to participate in the jury trial between Ms. Gonzalez and the underinsured defendant driver? (2) If so, is the participation of the UIM carrier at trial barred by public policy as a violation of the insurer's duty of good faith to its insured? (3) Does the collateral source rule apply to exclude the participation of the UIM carrier in a jury trial between the insured plaintiff and the underinsured defendant driver?

We conclude the right to defend language in the UIM contract necessarily includes the right to participate in the trial. Accordingly, we hold MET's participation at trial was not barred by the terms of the UIM contract. We further conclude the participation of the UIM carrier at trial is not barred by public policy as a violation of the insurer's duty of good faith to its insured. Finally, we hold the collateral source rule does not prohibit the participation of the UIM carrier at trial.

## FACTS

Shanna Petersen, now Petersen-Gonzalez, was a passenger in a vehicle driven by her fiance Matthew Gonzalez when the vehicle was struck from behind by a vehicle driven by Dan Garcia. Ms. Gonzalez sustained injuries and was later hospitalized with a severe vascular headache.

At the time of the accident, Ms. Gonzalez had an insurance policy from MET that included UIM coverage. The UIM section of the policy provided in part:

PROTECTION AGAINST UNDERINSURED
MOTORISTS COVERAGE
COVERAGE PROVIDED ONLY IF SHOWN IN
THE DECLARATIONS

We will pay bodily injury damages, caused by an accident arising out of the ownership, maintenance, or use of an underinsured highway vehicle, which you or a relative are legally entitled to collect from the owner or driver of an

underinsured highway vehicle. Any other person occupying a covered automobile has the same rights as you.

Whether any person is legally entitled to collect damages under this section, and the amount to which such person is entitled, will be determined by agreement between that person and us.

If there is a disagreement as to:

(a) Whether any person is legally entitled to collect damages under this Section; or

(b) The amount to which such person is entitled, the insured shall:

i. File a lawsuit in the proper court against the owner or driver of the underinsured motor vehicle and us, or if such owner or driver is unknown, against us; and

ii. Upon filing, give us copies of the summons and complaints filed by the insured in that action, and

iii. Secure a judgment in that action. The judgment must be the final result of an actual trial and an appeal, if an appeal is taken.

If the insured filed suit against the owner or driver of the underinsured motor vehicle, we have the right to defend on the issues of the legal liability of and the damages owed by such owner or driver . . . .

Except as provided above, we are not bound by any judgment against any person or organization obtained without our written consent.

Clerk's Papers (CP) at 69.

Ms. Gonzalez filed a complaint for damages against Mr. Garcia. Later, Ms. Gonzalez amended her complaint to name both Mr. Garcia and MET as defendants, pursuant to the terms of her UIM coverage.

MET participated in all aspects of the case throughout the discovery phase without Ms. Gonzalez's objection. Prior to trial, Ms. Gonzalez and Mr. Garcia filed motions in limine. Ms. Gonzalez argued that MET should be excluded from active participation in the trial based on the collateral source rule. The trial court denied this motion, concluding that under the UIM policy, MET had the right to actively participate in the litigation.

The first day of trial, the court decided Ms. Gonzalez's remaining motions in limine. Ms. Gonzalez attempted to withdraw the motion to exclude evidence of payments from a collateral source, but the trial court reserved all issues related to collateral source rule. Trial commenced with all three parties actively participating. Although the jury returned a verdict in favor of Ms. Gonzalez, she was dissatisfied with the award. The court denied Ms. Gonzalez's motion for a new trial. She appeals.

## ANALYSIS

■ *Standard of Review.* To resolve this appeal, this court must consider questions concerning the interpretation of the UIM contract, the validity of the right to defend provision in view of the insurer's duty of good faith, and the applicability of the collateral source rule. Interpretation of an insurance policy is an issue of law that appellate courts review de novo. *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989).

*Was MET's participation at trial barred by the terms of the UIM contract?*

■ ■ An insurance contract must be construed as a whole and interpreted as it would be understood by an average insurance purchaser. *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784, 958 P.2d 990 (1998). Undefined terms are given their ordinary meaning and one reliable way to determine this meaning is to consult a standard English dictionary. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990). If the language on its face is fairly susceptible to two different, but reasonable, interpretations, ambiguity exists, and the court will apply the interpretation most favorable to the insured. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997).

■ ■ Ms. Gonzalez first argues that the contract provides MET with the "right to defend," but does not provide MET with the right to participate. The term "right to defend" is not defined in the insurance contract. *Webster's*

*Third New International Dictionary* 591 (1993) defines the verb "defend" as meaning:

> to deny or oppose the right of a plaintiff in regard to (a suit or a wrong charged): controvert: oppose, resist <--a claim at law>: contest <--a suit>

The term "right to defend" is clear and unambiguous. Giving the term its ordinary meaning, the "right to defend" encompasses the right to participate at trial. Interpreting the word "defend" to mean that MET cannot participate in third party litigation would lead to a strained or forced construction and would create an absurd result.

Ms. Gonzalez next argues that the last two clauses in the contract create an ambiguity as to whether an insured is required to allow MET to participate in the third party action. She points out that these clauses provide that a perfected UIM claim may be pursued in two ways: (1) if MET participates in the third party action, the judgment is binding on MET, or (2) if MET does not participate in the trial, the judgment is not binding. She contends the two clauses, when read together, create an ambiguity as to whether an insured is required to allow MET to participate in the third party action.

This argument is without merit. The first clause provides that MET has the "right to defend" if the insured has filed a suit against the driver. The second clause provides that MET is not bound by any judgment obtained without its consent. These clauses do not create any ambiguity as to whether the insured is required to allow MET to participate. To the contrary, the contract expressly provides that MET has a right to defend.

Ms. Gonzalez maintains that it is somehow "fair" to allow the insured to decide whether MET should be allowed to participate at trial because the judgment would not be binding on MET if the insured elected to exclude MET. In unambiguous language, the insurance contract provides that MET has the "right to defend." The contract should not be rewritten based on what Ms. Gonzalez believes to be fair.

■■ Ms. Gonzalez also suggests that the right to defend provision is unenforceable because it is part of an adhesion contract. But this argument is unpersuasive. Adhesion contracts are not necessarily unconscionable; instead, applying general principles of contract interpretation, reviewing courts construe ambiguities in these agreements against the drafter. *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 459, 45 P.3d 594 (2002) (citing *Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 135, 677 P.2d 125 (1984); *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 827, 410 P.2d 7 (1966)). Here, there is no ambiguity and there is a strong public policy in favor of joining the UIM insurer and the tortfeasor in a single action. *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 248, 961 P.2d 350 (1998).

■ Finally, Ms. Gonzalez suggests that MET should not have participated at trial because she did not intend that the judgment would be binding against MET. Neither the contract nor the case law indicate that the UIM insured has the right to decide when a judgment is binding on a UIM insurer. Moreover, a UIM insurer is bound by a judgment or arbitration award against an underinsured tortfeasor if the UIM carrier had notice and a reasonable opportunity to intervene in the action. *Lenzi v. Redland Ins. Co.*, 140 Wn.2d 267, 273-74, 996 P.2d 603 (2000) (citing *Fisher*, 136 Wn.2d at 246).

*Assuming that MET has the right to participate at trial under the UIM contract, is the participation of the UIM carrier at trial barred by public policy as a violation of the insurer's duty of good faith to its insured?*

Ms. Gonzalez suggests that the right to defend provision is contrary to public policy because it creates a conflict of interest in violation of the "enhanced obligation" owed by an insurer to its insured.

■■ An insurer has a duty of good faith to its policy holders. To prevail on a bad faith claim, a policyholder must establish that the "insurer's breach of the insurance contract was 'unreasonable, frivolous, or unfounded.' " *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433, 38 P.3d 322

(2002) (quoting *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998)). When the insurer defends its insured under a "reservation of rights," an insurer need not put the insured's interests above his own but the insurer "must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests." *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386, 715 P.2d 1133 (1986). Because the relationship between a UIM insurer and its insured is adversarial, *Tank*'s "enhanced obligation rule" does not apply; however, a duty of good faith and fair dealing remains and the insured has a " ' "reasonable expectation" that he will be dealt with fairly and in good faith by his insurer.' " *Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 780, 15 P.3d 640 (2001) (quoting *Craft v. Econ. Fire & Cas. Co.*, 572 F.2d 565, 568-69 (7th Cir. 1978)), *overruled on other grounds by Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 78 P.3d 1274 (2003).

To a great degree, many of Ms. Gonzalez's arguments are based on her assumption that the enhanced duty applies here and that the contract provision allowing MET to participate at trial violates this enhanced duty. Ms. Gonzalez intimates that the enhanced duty applies in the UIM context because the insurer should bear both the benefits and the costs of the adversarial nature of the UIM relationship.

The *Ellwein* court examined the adversarial relationship between a UIM insurer and its insured and determined that *Tank*'s enhanced obligation rule was "simply unworkable in the UIM context." *Ellwein*, 142 Wn.2d at 780. The *Ellwein* court concluded that *Tank*'s enhanced duty did not apply because the UIM insurer "stands in the shoes" of the tortfeasor in that the liability to the insured is identical to the tortfeasor's liability up to the UIM policy limits. *Id*. As explained in *Ellwein*, "UIM coverage requires that a UIM insurer be free to be adversarial within the confines of the normal rules of procedure and ethics." *Id*. Accordingly, the UIM insurer is allowed to assert liability defenses available to the tortfeasor so that the insured is not placed in a better

position as a result of " 'being struck by an uninsured motorist as opposed to an insured motorist.' " *Id.* (quoting *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994)).

Because the enhanced obligation does not apply in the UIM context, Ms. Gonzalez's arguments based upon this premise fail.

Ms. Gonzalez also suggests that the right to defend provision interferes with her ability to be fully compensated. But "UIM insurance provides an excess layer of coverage that is designed to provide full compensation for all amounts *that a claimant is legally entitled to* where the tortfeasor is underinsured." *Ellwein*, 142 Wn.2d at 779-80 (emphasis added). The term "legally entitled to" is critical as the UIM's liability to the insured is identical to the tortfeasor's liability up to the amount of the UIM policy limits. *Id.* "UIM insurance provides a second layer of excess insurance coverage that 'floats' on top of recovery from other sources for the injured party." *Fisher*, 136 Wn.2d at 244 (citing *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990)). Consequently, we cannot accept Ms. Gonzalez's argument that the right to defend should be evaluated with reference to her damages.

Ms. Gonzalez also argues that limiting MET's right to defend by prohibiting participation at the third party trial is proper because MET is not prejudiced if she elects to litigate MET's UIM liability in a separate proceeding.

But the Washington Supreme Court has concluded that "the benefits of joining the UIM insurer and tortfeasor in a single action outweigh any conflict between an insurer and insured." *Fisher*, 136 Wn.2d at 248. The *Fisher* court explained that these benefits include: the efficiency of judicial economy, the elimination of multiple suit costs, anomalous results, inconsistent judgments, additional delay, and a more zealous defense. *Id.* at 248-49 (quoting J. Sue Myatt, Note, *Settlement Procedures in Underinsured Motorist Cases: The Underinsurer's Dilemma Between Preserving*

*the Insurer's Subrogation Right and Protecting the Insured's Settlement Right*, 14 J. Corp. L. 175, 184 (1988)).

Similarly, in *Lenzi*, the court, when listing concerns that were avoided by affording the UIM insurer the opportunity to intervene in third party litigation, included the possibility that "the tortfeasor might have minimal insurance coverage, thus lessening the incentive for the tortfeasor's insurance company to defend the action vigorously, again possibly leading to an artificially high award." *Lenzi*, 140 Wn.2d at 274.

Ms. Gonzalez argues that the right to defend clause should not be read to include the right to participate because the insured is prejudiced by having his or her UIM insurer introduced at trial. In making this argument, Ms. Gonzalez does not point to any argument, jury instructions, testimony, or other evidence that caused her actual prejudice. Moreover, from the record here, it appears that the trial court was cautious regarding the information that was provided to the jury regarding MET. Given the policy in favor of having the UIM insurer joined in the action with the tortfeasor, we will not assume prejudice where none is shown.

Next, Ms. Gonzalez contends that public policy requires that the right to defend provision be narrowly defined because she should not be placed in a disadvantageous position at trial merely because she purchased UIM coverage. This argument fails because of the nature of UIM insurance. UIM insurance does not provide full coverage; UIM liability to the insured is identical to the tortfeasor's liability up to the amount of the UIM policy limits.

*Does the collateral source rule prohibit the participation of the insured at trial?*

Ms. Gonzalez contends that the participation of MET at trial violated the collateral source rule and that the trial court erred by denying her motion in limine and her motion for a new trial.

The collateral source rule applies when an injured party receives compensation for his or her injuries

from a source independent from the tortfeasor. *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804, 585 P.2d 1182 (1978). "The policy behind the rule is that the wrongdoer should not benefit from collateral payments made to the person he has wronged." *Wash. Ins. Guar. Ass'n v. Mullins*, 62 Wn. App. 878, 886, 816 P.2d 61 (1991) (citing *Ciminski*, 90 Wn.2d at 805). In other words, "[t]he very essence of the collateral source rule requires exclusion of evidence of other money received by the claimant so the fact finder will not infer the claimant is receiving a windfall and nullify the defendant's responsibility." *Johnson v. Weyerhaeuser Co.*, 134 Wn.2d 795, 803, 953 P.2d 800 (1998).

Although Ms. Gonzalez seeks the application of the collateral source rule—a rule applied to exclude evidence— she has not identified any specific evidence or testimony that should have been excluded. Instead, Ms. Gonzalez seeks to use the collateral source rule to exclude a party from participating at trial. Ms. Gonzalez cites no case law to support the use of the collateral source rule to achieve this result. Ms. Gonzalez contends the collateral source rule is a policy-based rule of strict exclusion that should be extended to exclude the participation of UIM carriers in third party litigation.

Ms. Gonzalez's arguments are based on a misunderstanding of the collateral source rule and the purpose of UIM coverage. The collateral source rule is applied to prevent the wrongdoer from receiving a benefit from payments made by a source "wholly independent of the tortfeasor." *Mullins*, 62 Wn. App. at 886. But in UIM litigation, the UIM carrier stands in the shoes of the underinsured tortfeasor and UIM payments are treated as if made by the tortfeasor. *See Winters v. State Farm Mut. Auto. Ins. Co.*, 144 Wn.2d 869, 880, 31 P.3d 1164 (2001). There is no double recovery for the insured as UIM payments are made only to the extent that the insured does not recover from the tortfeasor, up to the UIM limits. A blanket rule excluding UIM carriers from third party litigation is unnecessary given the nature of UIM coverage and the policy in favor of having these matters resolved in a single proceeding.

Relying on cases like *Ciminski*, *Johnson*, and *Mullins*, MET argues that the collateral source rule applies only in circumstances where the payment from the collateral source has already been paid. In response, Ms. Gonzalez contends the timing of the payment is not dispositive as the underlying rationale for applying the collateral source rule is policy based. She urges this court to apply the policy-based reasoning.

While it is true that *Ciminski*, *Johnson*, and *Mullins* allowed the exclusion of the evidence of payments already made, this similarity is the result of the policy behind the collateral source rule as opposed to a limitation based on the timing of payments. The collateral source rule seeks to prevent a windfall to the tortfeasor by excluding evidence of payments made to the injured party from an independent source. It follows then that the amount of the payment would be determined with reference to an inquiry independent of the proceeding against the tortfeasor. Moreover, as a rule of evidence, the collateral source rule is of necessity triggered by evidence related to the payment made to the injured party.

Ms. Gonzalez argues that she should not be in a worse position because she had the forethought to purchase UIM insurance. She maintains that she should not be required to forgo the protection of the collateral source rule simply because she has UIM coverage. This argument is unpersuasive because she has not demonstrated how the collateral source rule applies to this case.

In sum, Ms. Gonzalez has failed to present any argument demonstrating that the collateral source rule applies to establish a blanket rule barring the participation of UIM insurers in third party litigation. As applied to the facts of this case, Ms. Gonzalez's argument is limited to application of the collateral source rule to bar MET as a party. She does not argue that the collateral source rule should be applied to exclude evidence, testimony, or a jury instruction. Having rejected the rule that a blanket exclusion applies, we conclude that the trial court did not abuse its discretion by

denying Ms. Gonzalez's motion in limine and allowing MET to participate at trial.

Affirmed.

BROWN, C.J., and KATO, J., concur.

Review denied at 152 Wn.2d 1027 (2004).