228 P.3d 780 (2010)
J.E. EDMONSON and Naomi I. Edmonson, husband and wife, Plaintiffs,
v.
Ivan G. POPCHOI and Varvara M. Popchoi, husband and wife, Respondents,
National City Mortgage, Inc., d/b/a National City Bank, an Ohio corporation; and Fidelity National Title Company of Washington, Inc., a Washington corporation, Defendants,
Csaba Kiss, a single person, Appellant.
No. 63051-2-I.
Court of Appeals of Washington, Division 1.
April 5, 2010.
*782 Matthew F. Davis, Melanie A. Leary, WA, for Appellant.
John Warren Hathaway, Law Offices of John W. Hathaway PLLC, Seattle, WA, for Respondents.
LEACH, J.
¶ 1 A statutory warranty deed incorporates the covenants defined in RCW 64.04.030. Csaba Kiss appeals the trial court's decision that he breached these covenants by conditioning acceptance of a defense tender upon his grantee's acknowledgement of his absolute right to settle a third party's adverse claim and pay his grantee damages. He also claims that his grantee waived these covenants by failing to disclose information about the adverse claim that the grantee acquired before closing. We affirm, holding that Kiss breached his duty to defend by demanding the right to settle based solely upon his own economic benefit without any investigation or evaluation of the merits of the adverse claim. We also hold that Kiss's covenants extended to potential claims for which his grantee had notice before closing.

FACTS
¶ 2 The facts of this case are largely undisputed. Kiss is an experienced real estate agent and real estate investor. Over the years, he has purchased 8 homes for his personal use and as many as 15 homes for use as rental properties. This case involves a rental property that Kiss purchased in 2002.
¶ 3 Ivan Popchoi is a residential builder. He hoped to buy Kiss's property, tear down the existing structure, and build a large, premium quality home. Kiss's property was not originally on the market, but Popchoi's real estate agent approached Kiss to negotiate a sale. In September 2005 Kiss agreed to sell.
¶ 4 Kiss granted Popchoi entry to conduct a lot survey two months later. The record of this survey, completed that same month, shows staked lot corners and an existing cyclone fence running east and west. This fence was situated approximately one foot north of the western half of the deeded property line. Only grass covered the eastern half of the same boundary.
¶ 5 Kiss did not ask to see the survey results, and Popchoi did not share them. Having never conducted his own survey, Kiss believed that the fence marked the southern *783 boundary. The sale closed in May 2006 with Kiss conveying title by statutory warranty deed.
¶ 6 Eager to develop the site, Popchoi quickly set to work. But the adjacent neighbors to the south, the Edmonsons, claimed they owned the property up to the fence line, a total area of 165 square feet. In August 2006 the Edmonsons notified Popchoi by letter that they were planning to initiate an adverse possession action to establish their legal title to the disputed property. Popchoi promptly notified Kiss of his intent to invoke his covenant rights under the statutory warranty deed should the Edmonsons file suit.
¶ 7 In March 2007 the Edmonsons filed suit in King County Superior Court, asserting title by adverse possession. As promised, Popchoi tendered his defense to Kiss and demanded indemnity. Kiss conditionally accepted the tender, explaining,
This acceptance is conditional only on your confirmation that the tender was made in accordance with RCW 64.04.030 and cases interpreting it. I point this out because your letter referred to the tender of "the defense" to the action rather than a "right to defend" it. A tender of the defense alone could be interpreted as retaining the right to control the defense, whereas a tender of the right to defend includes the right to compromise or settle the claim. If your client has tendered the right to defend the claim, Mr. Kiss accepts that tender. If your client intends to retain rights to which he is not entitled under RCW 64.04.030, then the tender is rejected.
¶ 8 Popchoi refused to consent. A few weeks later, he sent a letter to Kiss explaining that Kiss did not have the right to unilaterally settle the adverse claim and compensate Popchoi for the lost property. He wrote that under settled Washington law, "A seller who refuses to defend the grantee's title after receiving notice and tender is liable to the grantee for breach of warranty." He identified as damages diminution of property value plus impairment to marketability of title and consequential damages, including delays in construction. The record contains no further correspondence between the parties discussing the tender.
¶ 9 Popchoi defended the adverse possession suit at his own expense and joined Kiss as a third party defendant, asserting claims for breach of the warranties of seisin and defense. In July 2008 the trial court entered summary judgment quieting title to the disputed parcel in Edmonsons. Popchoi's third party claims for breach of warranties proceeded to a bench trial. At trial, Kiss testified that he had taken continuing education courses, understood what a statutory warranty deed was, and was aware of the legal implications of Popchoi's tender of defense. He also testified that he preferred to settle and pay Popchoi damages equal to the value of the lost property rather than defend the claim because this was the least expensive option for him. Kiss also testified that the only investigation he undertook into the merits of the Edmonson claim was to hand it over to his attorney. No evidence was submitted at trial showing that his attorney took any steps to investigate the claim.
¶ 10 The trial court found that Kiss breached his warranty to defend:
The seller is not entitled to insist that the buyer waive the right to defend the claim and agree to convey the property to the claimant unless the seller has conducted a reasonable investigation, informally and through formal discovery and, from the information so gained, reasonably concluded that the buyer has no good faith defense to the adverse possession claim. . . . The only evidence before the Court is Csaba Kiss's testimony that he conditioned his "acceptance" of the tender of defense upon the Popchois' agreement to abandon their right to a defense and to accept a partial refund of their purchase price solely because that course of action was less expensive for Csaba Kiss than defending the Popchois' title. Csaba Kiss's refusal to defend the Popchois' title unless they agreed to these conditions breached his covenant to defend their title against the Edmonsons' adverse possession claim.
The court also rejected Kiss's alternative argument that Popchoi waived all warranties regarding the Edmonson claim by failing to disclose the record of survey before closing. The court reasoned that "warranties made in *784 a statutory warranty deed protect the buyers from both known and unknown defects."
¶ 11 The court awarded Popchoi damages in the amount of $10,993.63, together with prejudgment interest, for the adversely possessed parcel and $30,281.90 for costs and attorney fees paid in defense of the Edmonson claim. It denied his claim for consequential damages.
¶ 12 Kiss appeals.

STANDARD OF REVIEW
¶ 13 On appeal from a bench trial, conclusions of law are reviewed de novo.[1] Findings of fact are reviewed to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law.[2] "Substantial evidence is evidence `in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'"[3] Unchallenged findings of fact are verities on appeal.[4] Whether a party breaches warranty deed covenants is a mixed question of law and fact.[5] The nature and extent of the obligation imposed by each covenant presents a question of law;[6] whether a party breached an obligation presents a question of fact.[7]

ANALYSIS
¶ 14 Kiss contends that a grantor has the absolute right to discharge its covenant to defend title by settling an encroachment claim and paying damages to the grantee based solely upon the comparative cost of a defense and the amount of damages and without regard to the merits of the claim. Alternatively, Kiss claims that Popchoi waived his rights under the warranties of seisin and defense as regards to the Edmonson claim by failing to inform him of the fence encroachment disclosed by the survey before closing.
¶ 15 RCW 64.04.030 defines the form of a statutory warranty deed and the five covenants made by a grantor conveying property with this form of deed:
"(1) that the grantor was seised of an estate in fee simple (warranty of seisin); (2) that he had a good right to convey that estate (warranty of right to convey); (3) that title was free of encumbrances (warranty against encumbrances); (4) that the grantee, his heirs and assigns, will have quiet possession (warranty of quiet possession); and (5) that the grantor will defend the grantee's title (warranty to defend)."[[8]]
Together, these warranties of title constitute the grantor's promise that the grantee will not suffer eviction by virtue of paramount title and that, should the grantee suffer a loss, the grantor will indemnify the grantee.[9] When a grantor breaches these warranties, an injured grantee may recover damages for lost property or diminution in property value and, in the context of the warranty to defend, attorney fees proximately caused by the breach.[10]
*785 ¶ 16 Here, Kiss denies breaching the fifth warrantythe warranty to defend. He maintains that as a matter of law he had the right to condition acceptance of Popchoi's defense tender as described because the tender completely surrendered Popchoi's rights to control the defense of the adverse possession claim. For support, he analogizes to an insurer's duty to defend, citing Petersen-Gonzales v. Garcia.[11] In that case, the court held that the term "right to defend" clearly and unambiguously authorized an underinsured motorist (UIM) insurer's participation in the trial of a third party action, even over the objection of its insured.[12] Kiss reasons the rights and obligations of the grantor and grantee under a statutory warranty deed parallel those of a UIM insurer and its insured. Accordingly, because a UIM insurer has the right to participate at trial over the insured's objection, a grantor defending under a warranty deed covenant has a similar right to control the defense of an encroachment claim even to the point of settling the claim over the buyer's objection.
¶ 17 Kiss's analogy is incomplete and, in part, inapt. It is incomplete because he overlooks the duties of good faith and fair dealing that circumscribe any adversarial UIM insurer-insured relationship.[13] And, just as an insurer's duties to defend and indemnify under an insurance contract are distinct and independent obligations,[14] so are the grantor's parallel duties. The analogy is inapt to the extent it fails to account for the unique character of real property.
¶ 18 Even though the UIM insurer stands in the shoes of the tortfeasor and is "`free to be adversarial within the confines of the normal rules of procedure and ethics,'" the insured still has a "`"reasonable expectation" that he will be dealt with fairly and in good faith by his insurer.'"[15] These duties of good faith and fair dealing "require the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage. In the event the insurer fails in either regard, it will have breached the covenant and, therefore, the policy."[16] This does not mean, however, than an insurer must do the unreasonable: "an insurer is [not] required to pay claims which are not covered by the contract or take other actions inconsistent with the contract."[17] So long as the insurance company acts honestly, bases its decision on adequate information, and does not overemphasize its own interest, the duty of good faith has not been breached.[18]
¶ 19 A grantor owes to his grantee similar duties of good faith and fair dealing under the statutory covenants. Principles of contract interpretation apply when we interpret deeds,[19] and in nearly every contract there is an implied covenant of good faith and fair dealing.[20] Generally speaking, this requires mutual cooperation so that each party may enjoy the full benefit of performance.[21] *786 In the context of the warranty to defend, a grantee does not receive the full benefit of performance unless the grantor both conducts a reasonable investigation, through formal and informal means, into the merits of the tendered claim to determine whether a good faith defense exists and makes an informed decision about how to proceed after taking into consideration the investigation results.
¶ 20 The independence of the grantor's obligations to indemnify and defend reinforces this conclusion. In the context of an insurance contract, the duty to defend is antecedent to the duty to indemnify and does not hinge upon the insurer's potential indemnity liability.[22] The grantor's duty to defend against an alleged breach of the warranty of seisin is similar. The grantor's duty to defend is antecedent to any duty to indemnify and does not depend upon the merits of the adverse party's claim to a right of possession.[23] Therefore, it is not hinged upon the grantor's potential indemnity liability. Here, Kiss refused to defend a small claim solely because of the cost of defense as compared to the cost of indemnity. In effect, Kiss merged his two covenants into a single financial obligation and sought to minimize the amount of that obligation by placing upon Popchoi's shoulders the full cost of investigating and prosecuting any possible defense to the Edmonson claim.
¶ 21 As mentioned above, Kiss's analogy is also somewhat inapt. Courts consider real property unique. "No piece of land has its counterpart anywhere else and it is impossible to duplicate by the expenditure of any amount of money."[24] For this reason, an obligation to defend a grantee's possession of land may be more valuable to the grantee than a right to recover money from its grantor. In other words, damages may not adequately compensate a grantee for a grantor's breach of its conveyance obligation.[25] Accordingly, a grantor's covenants in a warranty deed are not completely analogous to an insurer's promises in an insurance contract.
¶ 22 Having decided that the statutory warranty of defense includes a grantor's obligation to investigate the merits of a claim, we examine whether the trial court's findings of fact establish that Kiss failed to investigate the merits of the Edmonson adverse possession claim. The trial court made the following findings:
17. Mr. Kiss testified that he did not personally conduct any investigation or research into the merits of the Edmonsons' adverse possession claim. . . . Mr. Kiss submitted no evidence that, as of April 27, 2007, his attorney had conducted any investigation of the merits of the Edmonsons' adverse possession claim.
18. Mr. Kiss submitted no evidence that he or his attorneys ever notified the Popchois or the Popchois' attorney of the results of any investigation of the merits of the Edmonsons' adverse possession claim. Mr. Kiss did not submit any evidence of any expenses, legal fees or investigator fees that he had paid to investigate or research the merits of the Edmonsons' claims. Mr. Kiss's only testimony was that he had conditioned acceptance of the tender of defense on the Edmonsons' assignment of the right to convey the disputed property to the Edmonsons and refund the price paid for the conveyed land because that was the least expensive resolution of the dispute for him.
19. . . . Mr. Kiss submitted no evidence that his attorneys took any steps to defend the Popchois from the Edmonsons' adverse possession claim. The court file in this action does not contain any pleading that Mr. Kiss's attorneys filed on the Popchois' behalf. Kiss's attorney did not appear in the lawsuit on behalf of the Popchois.

*787 20. On May 23, 2007, [Kiss's attorney] accepted service of the Popchois' Third Party Complaint and Summons asserting their breach of warranty claims against Csaba Kiss. Mr. Kiss's attorneys appeared in the lawsuit, but continued taking no action to defend the Popchois against the Edmonsons' claim. . . .
Kiss does not challenge these findings on appeal. Because unchallenged findings of fact are verities on appeal, these findings support the legal conclusion that Kiss breached the warranty to defend.
¶ 23 Kiss excuses his breach on the basis that Popchoi waived his rights under the warranty of title by failing to disclose the survey results before sale. He maintains that the leading modern case, Foley v. Smith,[26] was either wrongly decided by this court or is factually distinguishable. We disagree on both accounts.
¶ 24 In Foley, we held that knowledge of potentially superior claims on the part of the grantee did not bar the grantee's right to recover for breach of the covenants made under the statutory warranty deed.[27] We relied on a Washington Supreme Court case, Fagan v. Walters,[28] where the court stated, "`It is a well-settled rule that knowledge by the grantee at the time of the conveyance, of the existence of . . . a defect in the grantor's title, does not control the force and effect of the express covenants in the deed, or affect the question of breach.'" Following Fagan, we focused on the scope of the warranty of title:
Such covenants warrant against known as well as unknown defects, and grantees with knowledge of an encumbrance have the right to rely on the covenants in the deed for their protection. The purpose of the covenant is protection against defects, and to hold that grantees can be protected only against unknown defects would rob the covenant of much of its value and destroy the force of its language.[[29]]
Because Fagan and the Washington precedent it followed remain binding upon this court, we decline to revisit Foley.[30]
¶ 25 Kiss seeks to distinguish Foley on the basis that the grantor and grantee each knew of the title defect while only Popchoi had knowledge of the survey results in this case. This is a distinction without a difference. The warranty to defend obliges the grantor to defend the grantee against subsequently asserted third party claims whether or not previously known.[31] In an unbroken line of cases, beginning with West Coast Manufacturing & Investment Co. v. West Coast Improvement Co.[32] in 1901, Washington courts have held that the warranty applies to all defects and has refused any invitation to limit its scope based upon the grantee's knowledge. We decline to do so here. Therefore, whether Popchoi knew of a possible defect before sale is immaterial.
¶ 26 Finally, nothing in the record evidences Popchoi's intent to waive, either expressly or by conduct, the warranty to defend. "A `waiver' is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right."[33] If a waiver is not found by express agreement, "[a] waiver by conduct occurs if the actions of the person against whom waiver is claimed are inconsistent with any intention other than waiver."[34] Here, the parties agree that there was no express waiver. Moreover, *788 Popchoi's actions were not inconsistent with any intent other than to waive the warranty. Even Kiss admitted in his correspondence that Popchoi's actions appear to have been made in reliance on the warranties of title made under the statutory warranty deed.

CONCLUSION
¶ 27 We conclude that a grantor must conduct a reasonable investigation into the merits of a claim involving seisin and include a reasonable consideration of the results in any decision to settle that claim under the warranty to defend. In light of established precedent, we decline Kiss's invitation to limit the warranty in those circumstances where the grantee, but not grantor, has notice of a possible defect in title or possession. We affirm.
WE CONCUR: DWYER, A.C.J., and BECKER, J.
NOTES
[1] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 880, 73 P.3d 369 (2003).
[2] Hegwine v. Longview Fibre Co., 132 Wash.App. 546, 555, 132 P.3d 789 (2006).
[3] J.E. Dunn Nw. Inc. v. Dep't of Labor & Indus., 139 Wash.App. 35, 43, 156 P.3d 250 (2007) (quoting Holland v. Boeing Co., 90 Wash.2d 384, 390-91, 583 P.2d 621 (1978)).
[4] Robel v. Roundup Corp., 148 Wash.2d 35, 42, 59 P.3d 611 (2002).
[5] See, e.g., Niemann v. Vaughn Community Church, 154 Wash.2d 365, 374, 113 P.3d 463 (2005); Roeder Co. v. Burlington N., Inc., 105 Wash.2d 567, 571-72, 716 P.2d 855 (1986) (deed interpretation is a mixed question of fact and law).
[6] Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002).
[7] See, e.g., Cudmore v. Tjomsland, 44 Wash.2d 308, 308-09, 266 P.2d 1058 (1954) (breach of warranty as question of fact); Frank Coluccio Constr. Co. v. King County, 136 Wash.App. 751, 762, 150 P.3d 1147 (2007) (breach of contract is factual question).
[8] Mastro v. Kumakichi Corp., 90 Wash.App. 157, 162, 951 P.2d 817 (1998) (quoting 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 7.2, at 447 (1995)).
[9] WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK SERIES: REAL ESTATE ESSENTIALS 1 & 2 § 5.4(2), at 5-7 (4th ed.2009).
[10] Mastro, 90 Wash.App. at 163, 951 P.2d 817.
[11] 120 Wash.App. 624, 86 P.3d 210 (2004).
[12] Petersen-Gonzales, 120 Wash.App. at 631, 86 P.3d 210.
[13] Petersen-Gonzales, 120 Wash.App. at 633, 86 P.3d 210 (observing that though the insurer need not put the insured's interest above its own in the UIM relationship, a minimum duty of good faith and fair dealing survives (citing Ellwein v. Hartford Accident & Indem. Co., 142 Wash.2d 766, 780, 15 P.3d 640 (2001))).
[14] Viking Ins. Co. v. Hill, 57 Wash.App. 341, 346-47, 787 P.2d 1385 (1990).
[15] Petersen-Gonzales, 120 Wash.App. at 633, 86 P.3d 210 (quoting Ellwein, 142 Wash.2d at 780, 15 P.3d 640).
[16] Coventry Assocs. v. Am. States Ins. Co., 136 Wash.2d 269, 281, 961 P.2d 933 (1998) (quoting 1 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS, § 2.05, at 38 (3d ed. 1995)).
[17] Coventry, 136 Wash.2d at 280, 961 P.2d 933.
[18] Coventry, 136 Wash.2d at 280, 961 P.2d 933.
[19] See, e.g., Carr v. Burlington N., Inc., 23 Wash. App. 386, 390-91, 597 P.2d 409 (1979) (ambiguity in a deed is resolved in favor of grantee and against grantor); Hoglund v. Omak Wood Prods., Inc., 81 Wash.App. 501, 504, 914 P.2d 1197 (1996) (parties' intent is derived from reading the deed as a whole, giving words their ordinary meaning).
[20] Badgett v. Sec. State Bank, 116 Wash.2d 563, 569, 807 P.2d 356 (1991).
[21] See Ross v. Ticor Title Ins. Co., 135 Wash.App. 182, 190, 143 P.3d 885 (2006), aff'd sub nom. Ross v. Kirner, 162 Wash.2d 493, 172 P.3d 701 (2007).
[22] Viking, 57 Wash.App. at 346-47, 787 P.2d 1385.
[23] Double L Props., Inc. v. Crandall, 51 Wash. App. 149, 156, 751 P.2d 1208 (1988).
[24] Carpenter v. Folkerts, 29 Wash.App. 73, 76, 627 P.2d 559 (1981).
[25] Carpenter, 29 Wash.App. at 76, 627 P.2d 559.
[26] 14 Wash.App. 285, 539 P.2d 874 (1975).
[27] Foley, 14 Wash.App. at 292, 539 P.2d 874.
[28] 115 Wash. 454, 457, 197 P. 635 (1921) (quoting 8 Am. & Eng. Enc. Law 86 (2d ed. 1898)).
[29] Foley, 14 Wash.App. at 292-93, 539 P.2d 874 (citation omitted).
[30] 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wash.2d 566, 578, 146 P.3d 423 (2006) (decisions by the state Supreme Court are binding on all lower courts).
[31] See Foley, 14 Wash.App. at 291, 539 P.2d 874.
[32] 25 Wash. 627, 637, 66 P. 97 (1901).
[33] Birkeland v. Corbett, 51 Wash.2d 554, 565, 320 P.2d 635 (1958).
[34] Shinn v. Thrust IV, Inc., 56 Wash.App. 827, 843-44, 786 P.2d 285 (1990) (citing Birkeland, 51 Wash.2d at 565, 320 P.2d 635).