[No. 84695-2. En Banc.]
Argued May 24, 2011. Decided August 4, 2011.

J.E. EDMONSON ET AL., *Plaintiffs*, v. IVAN G. POPCHOI ET AL., *Respondents*, NATIONAL CITY MORTGAGE, INC., ET AL., *Defendants*, CSABA KISS, *Petitioner*.

*Matthew F. Davis*, for petitioner.

*John W. Hathaway* (of *Law Offices of John W. Hathaway PLLC*), for respondents.

¶1 OWENS, J. — This case involves a property dispute that arose after the sale of a plot of residential land pursuant to a statutory warranty deed. Specifically, this case presents the question of whether a grantor's duty to defend against another's claim to title is satisfied by that grantor's independent decision to settle the claim, whatever its merits, and pay the grantee damages for the breach of warranty. We hold that the duty to defend requires that a grantor defend in good faith and that the duty was breached in this case. We also hold that the grantee in this case did not waive the warranties of the statutory warranty deed by failing to disclose an encroachment.

## FACTS

¶2 On May 4, 2006, pursuant to a statutory warranty deed, Csaba Kiss sold a parcel of residential property to Ivan and Varvara Popchoi for $575,000. The Popchois bought the property with the intent of tearing down the existing house and building another to sell. Ilene and Jim Edmonson own the neighboring property to the south of the lot that the Popchois purchased.

¶3 Before closing, the Popchois commissioned a survey of Kiss's land, which revealed that a cyclone fence was set north of the actual southern property boundary, within the lot. The Popchois' survey showed that the fence was between several inches and more than one foot north of the property line in different places. The surveyor placed stakes at the corners of the actual property line. The fence had been built by a prior owner of the Kiss lot, not by the Edmonsons, and it did not extend across the full length of the property. Kiss testified that he was not aware that the survey revealed a discrepancy between the property line and the location of the fence because the survey was neither recorded nor made known to him by the Popchois. The sale nonetheless proceeded.

¶4 Shortly after the sale, on August 6, 2006, the Edmonsons sent a letter to the Popchois, notifying the Popchois of their adverse possession claim to the property south of the fence. The Popchois in turn forwarded this information to Kiss by letter, dated August 31, 2006, and demanded that he quickly resolve the dispute. In that letter, the Popchois communicated that they were about to pour the foundation for the new house and that the adverse possession claim would force a delay, as well as make questionable their ability to develop the property in the way that they had intended.

¶5 After unsuccessful attempts to negotiate a resolution, the Edmonsons filed a complaint to quiet title in King County

Superior Court on March 7, 2007, asserting that they acquired title to part of the Popchoi lot by adverse possession. On March 20, 2007, counsel for the Popchois submitted a "tender of defense" to Kiss as "the seller of the property and grantor of the statutory warranty deed." Clerk's Papers (CP) at 162; Trial Ex. 6. Kiss conditionally accepted by a letter from his lawyer dated April 27, 2007, stating in relevant part:

> Mr. Kiss conditionally accepts the tender of the right to defend the adverse possession action. This acceptance is conditional only on your confirmation that the tender was made in accordance with RCW 64.04.030 and cases interpreting it. I point this out because your letter referred to the tender of "the defense" to the action rather than a "right to defend" it. A tender of the defense alone could be interpreted as retaining the right to control the defense, whereas a tender of the right to defend includes the right to compromise or settle the claim.

Trial Ex. 7; *see* CP at 162. Kiss testified that it was his understanding that "the Edmonson[s'] claim was going to be agreed to" and he would "pay damages to Popchoi" because "that would be less expensive than defending the lawsuit." Tr. (Jan. 8, 2009) at 25-26.

¶6 There is no evidence in the record that Kiss or his attorneys investigated the merits of the Edmonsons' adverse possession claim or assisted in the representation of the Popchois against the Edmonsons. "The time records of Mr. Popchoi['']s attorney, John Hathaway, show that he defended the adverse possession claim." CP at 164 (citing Trial Ex. 19). Through a third party complaint by the Popchois, Kiss was joined as a third party defendant to the Edmonsons' claim.

¶7 On July 18, 2008, King County Superior Court granted the Edmonsons' motion for summary judgment, finding that their "use of the disputed property was open, notorious[,] hostile & exclusive for the requisite 10 years." CP at 130-31. The superior court transferred title to 165 square feet of land along the southern property line of the

Popchois' lot to the Edmonsons. Besides the loss of land, the diminishment of the Popchoi title caused the Popchois to be nonconforming with certain land use regulations of the city of Bellevue. The Popchois' total lot size was reduced from 8,630 square feet to 8,465 square feet, which is less than the 8,500 square feet required for residential lots in Bellevue's "R-4" zone, the zoning designation of the Popchoi lot. Additionally, the Popchois built their house five feet from where they believed the property line to be; since the Edmonsons prevailed, the Popchoi house is now three feet from the actual property line, which is nonconforming with Bellevue's land use ordinances that require a minimum five-foot setback.

¶8 On February 5, 2009, King County Superior Court granted the Popchois some relief in their third party claim against Kiss. Specifically, the trial court ordered that Kiss pay the damages of his breach of warranty, the amount the Popchois paid for the 165 square feet of land to which they lost title, including the enhancement of the value of that property and interest. The trial court did not award the Popchois damages for construction delay or for diminution in the land value based on how the change of the lot size caused nonconformance with applicable land use regulations. Those rulings are not now disputed. What is disputed is the trial court's order that Kiss pay the Popchois $30,281.90, the total amount of legal fees and costs that the Popchois incurred to defend against the adverse possession claim. The trial court based this judgment on its legal conclusion that Kiss did not have the right to condition acceptance of the tender of defense on his ability to settle the claim, without any investigation of its merits, and simply pay damages for breach in the amount of the value of the diminished title.

¶9 Kiss appealed, and the Court of Appeals affirmed the trial court. *Edmonson v. Popchoi*, 155 Wn. App. 376, 390, 228 P.3d 780 (2010). We accepted review. *Edmonson v. Popchoi*, 170 Wn.2d 1001, 243 P.3d 551 (2010).

278

## ISSUES

¶10 1. Can the grantor of a statutory warranty deed satisfy the duty to defend against another's claim to title by settling the claim, regardless of its merits, and paying damages to the grantee for breach of warranty?

¶11 2. Does a grantee waive a breach of warranty claim by failing to notify the grantor of an encroachment?

## ANALYSIS

A. *Standard of Review*

¶12 Questions and conclusions of law are reviewed de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). "Statutory interpretation is a question of law." *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

B. *Warranty To Defend*

 ¶13 Statutory warranty deeds are governed by RCW 64.04.030 and include a covenant to defend against another's claim to title. In relevant part, the statute states that

> [the grantor] warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and *will defend the title thereto* against all persons who may lawfully claim the same.

RCW 64.04.030 (emphasis added). The covenant to defend is "obligatory upon any grantor . . . as fully and with like effect as if written at full length in such deed." *Id.* "Where covenants under the warranty deed are breached, an injured grantee is entitled to recover both damages for lost property or diminution in property value and attorney's fees incurred in defending title." *Mastro v. Kumakichi Corp.*, 90 Wn. App. 157, 163, 951 P.2d 817 (1998) (citation omitted).

Kiss sold the Popchois a plot of residential real estate pursuant to a statutory warranty deed.

¶14 There is little Washington case law interpreting the covenant to defend in the statutory warranty deed. The leading cases on point involve questions of the sufficient notice or tender of defense to the grantor necessary to make the grantor liable for attorney fees incurred by the grantee in the course of defending title to the property. *See Mellor v. Chamberlin*, 100 Wn.2d 643, 648-49, 673 P.2d 610 (1983); *Mastro*, 90 Wn. App. at 164-66. The central question in this case is whether the duty to defend is satisfied by a settlement to the grantee for the breach of warranty, conceding a third party's claim to title and payment of damages for the value of the portion by which the title is diminished. Neither *Mastro* nor *Mellor* addresses the scope of the grantor's duty to defend.

¶15 Based on a plain reading of the statute and the implied duty of good faith, we hold that the warranty to defend means that, upon proper tender, a grantor is obligated to defend in good faith and is liable for a breach of that duty. The plain meaning of "defend" means something more than complete concession to another party's claim. BLACK'S LAW DICTIONARY 482 (9th ed. 2009) (defining to "defend" as "[t]o deny, contest, or oppose (an allegation or claim)"). An interpretation of the warranty to defend that includes mere concession to another's claim to title, regardless of the merits, would render the warranty to defend superfluous in the statute. A grantee can already recover for the diminished title under the warranties that the estate is "free from all encumbrances" and of "quiet and peaceable possession of [the] premises." RCW 64.04.030. The duty to defend must mean something more. This is especially important in light of the unique character of real property because the tract of land, title to which needs defending, may be of greater value to the grantee than its

monetary value reflects.[1] *See Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App. 203, 222, 242 P.3d 1 (2010) ("[B]ecause land is unique and difficult to value, specific performance is often the only adequate remedy for a breach of contract regarding real property."), *review denied*, 171 Wn.2d 1014, 249 P.3d 1029 (2011). Finally, an implied covenant of good faith inheres in every contract. *Miller v. Othello Packers, Inc.*, 67 Wn.2d 842, 844, 410 P.2d 33 (1966). The duty of good faith requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (1981); *see id.* cmt. d ("[B]ad faith may be overt or may consist of inaction."). As with any covenant of any contract, we read a duty of good faith into the warranty to defend. Accordingly, the promise that a grantor will defend against all other claims to title must mean something more than that the grantor will do nothing but concede such claims.

¶16 Kiss breached his duty to defend in good faith. The contract between Kiss and the Popchois included a warranty to defend against another's claim to title by reference to the fact that the sale of land was pursuant to a statutory warranty deed. When the Edmonsons filed their claim, the Popchois sent a tender of defense to Kiss. Kiss conditioned his acceptance of the tender on his right to control the defense, including settling the case without putting on any defense. This condition of acceptance effectively rendered his response a refusal of the tender. *Cf. Mastro*, 90 Wn. App. at 166 (assuming that failure to respond to a tender of defense "constitutes a refusal to defend"). Kiss now argues that this case is about control over the defense strategy and that a grantee cannot control the defense after issuing a tender of defense to the grantor. However, a concern about

---

[1] This case presents a relevant example: loss of title to the disputed tract of land not only meant the loss of the land itself but caused the Popchois to be noncompliant with land use regulations of the city of Bellevue and affected their planned use of the entire lot.

micromanagement is a far cry from the facts of this case, where Kiss immediately sought to concede and settle the claim, without any evident consideration of the merits, because it would be most cost effective for him. Such indifference to the dispute and out-of-hand dismissal of the duty to defend simply cannot be characterized as satisfying the warranty to defend. Rather, Kiss's refusal to defend in good faith constitutes a breach of warranty.

¶17 At the crux of Kiss's argument that he did not breach his warranty to defend is a distinction between a "duty to defend" and a "right to defend." He argues that the statutory warranty deed provides only that a grantor has the "right to defend." The statute, however, does not contain language about a right; rather, it provides that the grantor "*will* defend the title." RCW 64.04.030 (emphasis added). The language of a "right to defend" appears in case law but does not support Kiss's interpretation. *See, e.g., Mellor,* 100 Wn.2d at 648; *Mastro,* 90 Wn. App. at 165 (quoting *Dixon v. Fiat-Roosevelt Motors, Inc.,* 8 Wn. App. 689, 692, 509 P.2d 86 (1973)). In *Mellor,* this court stated:

> RCW 64.04.030 expressly states the grantor—not the grantee—will defend title against third persons. Whether a covenantee is successful at defending title is irrelevant, as the right to defend statutorily lies with a covenantor.

100 Wn.2d at 648. *Mellor* referred to the right of the grantor to defend because, in that case, the grantee defended without giving any notice to the grantor of the dispute and then sought attorney fees. *Id. Mellor* stands only for the rule that the grantor cannot be found to owe attorney fees as a result of a breach of the duty to defend if the grantor never received notice or opportunity to fulfill the duty to defend. *Id. Mastro* similarly involved a question of the requirements of a "tender of defense."[2] 90 Wn. App. at 165. The specific language of the "right to defend," taken in context, refers to the grantee's action of handing over the

---

[2] Kiss does not argue that the Popchois' tender of defense was inadequate.

grantee's right to defend to the grantor through a tender of defense; it does not convert the grantor's duty into a right.

¶18 Kiss cites *Petersen-Gonzales v. Garcia*, 120 Wn. App. 624, 86 P.3d 210 (2004), to define the "right to defend," but, as the Court of Appeals noted below, the analogy to *Petersen-Gonzales* and generally to insurance law is incomplete and inapt. *Edmonson*, 155 Wn. App. at 385. *Petersen-Gonzales* involved a contractual dispute over the right of the insurer to defend in an underinsured motorist suit. 120 Wn. App. at 629. That court held that an insurer's contractual " 'right to defend' " included the right to participate at trial, despite the insured's motion to exclude the insurer. *Id.* at 630-31. Importantly, the contract in that case created a right, not a duty, of the insurer, which is simply not analogous to the duty of Kiss, as grantor, to defend against another's claim to title pursuant to a statutory warranty deed.

¶19 A more appropriate analogy would be to cases involving the duty of an insurer to defend, but Kiss would not find support there for his argument that he may just settle and pay damages. "[T]he duty to defend is different from and broader than the duty to indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). In the insurance context, this court has recognized that the right to a defense may be "of greater benefit" than indemnity and has held that "if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id.* at 405. If pressed to draw an insurance analogy to the statutory warranty deed, which we do not find necessary,[3] a grantor's settlement of a third party claim to title by concession and paying damages

---

[3] Both the Court of Appeals and trial court in this case found that Kiss had a duty to investigate. A duty to investigate can be found in insurance law. *See, e.g.*, WAC 284-30-330(4) ("Refusing to pay claims without conducting a reasonable investigation" is an unfair or deceptive act or practice.); *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 281, 961 P.2d 933 (1998) (finding that a reasonable investigation is required before coverage is denied). While it is hard to imagine how a grantor could defend in good faith without investigating the merits of a

to the grantee is most like indemnity. The duty to defend is something different under both insurance law and a statutory warranty deed.

¶20 We hold that the warranty to defend in a statutory warranty deed, RCW 64.04.030, requires that the grantor provide a good faith defense to title. Kiss effectively refused the Popchois' tender of defense when he conditioned his acceptance on a nonexistent right to settle the claim without any consideration of its merits. Accordingly, we affirm the Court of Appeals and hold that Kiss breached the warranty to defend and is therefore liable for the attorney fees incurred by the Popchois in defense of their title.

C. *Waiver of the Warranty To Defend*

¶21 Kiss alternatively argues that the Popchois waived the warranty of defense and other warranties of the deed. Specifically, he argues that the Popchois failed to disclose survey results that showed the fence as an encroachment and that this constitutes a waiver of the deed's warranties. Kiss testified that, had he known about the discrepancy between the placement of the fence and the actual property line, he would not have proceeded with the sale. The Popchois did not have any apparent knowledge of the legal effect of the fence, which had been built by a previous owner of the Kiss lot, not by the Edmonsons. Specifically, the Popchois did not know that the location of the fence implicated a viable adverse possession claim.

¶22 Kiss's claim that the Popchois waived the warranties of the deed is without merit. At least since 1901, Washington courts have followed the rule that a grantee does not waive the covenants of a deed by having knowledge of a defect. *Edmonson*, 155 Wn. App. at 389 (citing *W. Coast Mfg. & Inv. Co. v. W. Coast Improvement Co.*, 25 Wash. 627, 637, 66 P. 97 (1901)); *accord Fagan v. Walters*, 115 Wash. 454, 457, 197 P. 635 (1921). "Such covenants warrant against

---

third party claim to title, we opt not to extend the insurance analogy. It is sufficient to say that Kiss had a duty to defend in good faith.

known as well as unknown defects, and grantees with knowledge of an encumbrance have the right to rely on the covenants in the deed for their protection." *Foley v. Smith*, 14 Wn. App. 285, 292, 539 P.2d 874 (1975). In *Foley*, both the grantee and grantor had knowledge of the defect, but as the Court of Appeals noted in this case, "[t]his is a distinction without a difference." *Edmonson*, 155 Wn. App. at 389.

¶23 We hold that the Popchois did not waive the warranty of defense of the title by failing to notify Kiss of the survey that showed that the cyclone fence was set north of the actual property line.

## CONCLUSION

¶24 The warranty to defend against another's claim to title under a statutory warranty deed means that, upon a grantee's tender of defense, a grantor must provide a good faith defense to title or face liability for breach of the warranty to defend. That warranty is not waived by the grantee's knowledge of and failure to disclose an encroachment. Accordingly, we affirm the Court of Appeals and trial court: Kiss is liable to the Popchois for breach of the warranty to defend and must pay the attorney fees they incurred to defend their title.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.